UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.:

**DAVID NDALAMBA, an individual resident of
Canada, and STARLINE MEDIA, INC.,
a Canadian corporation,**

    Plaintiffs,

v.

**ELISHA TRICE, an individual resident of Florida,
JOMY STERLING, an individual resident of Florida,
and STAR STATUS GROUP, a company of
unknown residency,**

    Defendants.
_____/

## COMPLAINT FOR COPYRIGHT INFRINGEMENT, INJUNCTIVE RELIEF AND DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiffs, **DAVID NDALAMBA, and STARLINE MEDIA, INC., (collectively, "NDALAMBA")** ) file this Complaint through undersigned counsel against ELISHA TRICE, JOMY STERLING, and STAR STATUS GROUP, and respectfully alleges as follows:

**I. NATURE OF THE ACTION.**

1. This is an action by NDALAMBA against Defendants **ELISHA TRICE, an individual, ("Trice") JOMY STERLING, and STAR STATUS GROUP,** doing business as Star Status Group, (collectively,"SSG").

2. Plaintiffs, NDALAMBA and STARLINE, are collectively, the lead programmers for a video game titled ROYALE HIGH, on a platform called Roblox, and the game produces revenues approaching $1,000,000 per month.

1

3. TRICE was hired by Plaintiffs to perform certain computer programming services related to the development of ROYALE HIGH, and was hired to work on external systems, including back ups, player purchase history tracking systems, error reporting, and storage for players in game communications.

4. The code for the external systems is live on github, a code repository tool, and on Plaintiffs production servers, which exist on servers hosted through Amazon Web Services.

5. TRICE was also given access to Plaintiffs production, and staging database, although TRICE was instructed only to use the staging database while working and a local test environment while developing the application.

6. On June 19, 2019, TRICE executed a Non-Disclosure Agreement ("NDA"), attached here to as Exhibit L, and on June 19, 2019, TRICE was provided access to the confidential portions of the game.

7. At some point thereafter, and after TRICE's services were completed, TRICE disclosed the confidential information related to the ROYALE HIGH game to JOMY STERLING and STAR STATUS GROUP, and the information shared far exceeded any of the work performed by TRICE.

8. TRICE, in violation of the NDA and without permission, shared the information, stole aspects of the game, and provided this information to Defendants STERLING and STAR STATUS GROUP, and developed a game titled CROWN ACADEMY, that uses the identical information in its development.

9. The Crown Academy game simply uses certain material otherwise protected by copyright, or by the NDA, and is done so without permission.

10. The Crown Academy game is purported to either have recently been released, or is in the process of imminent release.

11. This action seeks a remedy for the wrongful disclosure of the protected information, the theft, the misappropriation of Plaintiffs' computer code.

12. The value is in the millions of dollars.

## II. PARTIES.

13. Plaintiffs, DAVID NDALAMBA and STARLINE MEDIA, INC. are both residents of Ontario, Canada.

14. Defendant, ELISHA TRICE, is an individual resident of the State of Florida, and resides in Ocala, is this District, and is otherwise able to be sued in this District.

15. Defendant, JOMY STERLING, is an individual resident of the State of Florida, resides in Ocala, within judicial District, and is otherwise able to be sued in this District.

16. Defendant, STAR STATUS GROUP, is a corporation of unknown residency, but operates within this District, by and through Defendant JOMY STERLING.

## III. JURISDICTION AND VENUE.

17. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, as Plaintiffs' claims pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (Count I below) and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq. (Count IV below), arise under laws of the United States. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they are related to the Copyright Act and CFAA claims in that they form part of the same case or controversy. 10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1400(a) because Defendants reside in this District

and a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in this District.

### IV. GENERAL ALLEGATIONS.

#### A. **Defendant TRICE's Breach of the Software Development Non-Disclosure Agreement**.

18. Plaintiffs are engaged in the business of computer game development, and hired TRICE to perform development services. As a condition to the hiring of TRICE, on June 19, 2019, the parties entered into a Software Development Non-Disclosure Agreement. (**Exhibit M**).

19. The agreement required that TRICE is prohibited from disclosing confidential and proprietary information obtained by TRICE as part of the performance of his services.

#### A. **Exhibits As Evidence In Support of General Allegations**.

20. Exhibit A is a comparison between Royale High's shop UI and Crown Academy's shop UI, showing stolen assets were going to be used in Crown Academy, amounting to substantial similarity.

21. The image on the top shows the structure and design for Royale High's shop. The image on the bottom shows the structure and design of Crown Academy's shop. Crown Academy's shop is clearly ripped out from Royale High's shop.

22. The objects created are essentially identical. The only way to copy the structure exactly is to have access to the game file.

23. Fonts are the same, even Plaintiffs' diamond icon had not been swapped out. (Diamonds are the virtual currency in Royale High).

24. This shop design is new, and TRICE was not contracted during the time this version was live in Plaintiffs' game. TRICE unlawfully accessed Plaintiffs' account and downloaded a newer version of the game after leaving Plaintiffs.

25. As further demonstrated in Exhibit F, TRICE had access to Plaintiffs' account, which was is how he would have been able to gain access.

26. Exhibit B is a copy of Plaintiffs' application that TRICE stole, and slightly modified showing his intent to steal for competitor, Crown Academy, and Defendants STERLING and STAR STATUS GROUP.

27. The application was never made available to the public. It exists on a private GitHub repository which trice had access to.

28. Exhibit B is a screenshot sent highlighting that TRICE stole it and was planning on using it in Crown Academy.

29. The colors show a difference in a previous version of the file versus a modified version. The red highlights were removed, the green highlights were added.

30. TRICE replaced the line "RH API Loaded" to "Crown API Loaded v2" indicating the intention to use it on Crown Academy, which he did.

31. Exhibit C is a copy of Plaintiffs' game that TRICE unlawfully, and in breach of the agreement, shared with the other Defendants.

32. TRICE unlawfully shared this information unlawfully to other third parties in violation of the agreement.

33. Composite Exhibit D is evidence of TRICE agreeing to the terms of the Non-Disclosure Agreement, in June, 2019, which immediately gave him access to Plaintiffs' protected materials, including a copy of the Non-Disclosure Agreement (NDA)..

34. An agreement to be bound by the terms of the NDA were a prerequisite to TRICE being given access to Plaintiffs' game, with the promise to respect the information as confidential, and to comply with the secrecy terms of the NDA.

35. Exhibit E is evidence that TRICE was given access to the game after execution of the NDA.

36. Exhibit E is evidence that Plaintiffs gave TRICE access to a copy of the game (the copy in Exhibit C), after the NDA was signed.

37. Exhibit F is evidence that TRICE was given access to Plaintiffs'' account, where TRICE went on and downloaded newer copies of the game.

38. TRICE was granted access to Plaintiffs' account in August 2019 (after the NDA was signed) for help solving some specific issues.

39. TRICE used the access to Plaintiffs' account to later download copies with the intent to use in Crown Academy.

40. Exhibit G is evidence that TRICE, via screen sharing, stole a version of Royale High, and used it, disseminated it, published it, and otherwise unlawfully accessed the information without authority to do so.

41. In Exhibit G, TRICE, in the screenshot, TRICE is screen sharing a stolen version of Royale High.

42. On the bottom left, TRICE's name is in a red frame with white text that says "Live" (meaning that he is screen sharing).

43. TRICE shared a version of our game with Defendants STERLING and STAR STATUS GROUP, a version that was created long after TRICE;s contracted duties had ended.

44. By August 2019, TRICE was no longer a contracted worker and the only way TRICE could have gained access was by downloading copies through access that he had to Plaintiffs' account.

45. Exhibit H is evidence that Defendant STERLING, owner of Star Status Group, sending Plaintiffs' game to a third party, demonstrating her awareness of the theft and intend to use and profit off of stolen work.

46. Defendant STERLING was clearly aware of, and supportive of the theft. This screenshot (Exhibit H) shows her sending a place file on October 3, 2019.

47. Exhibit I is an effort by Defendants STERLING and STAR STATUS GROUP's attempts to cover up the theft by deleting the message STERLING sent of the game file.

48. On May 12, 2020, there was a snippet of Plaintiffs' computer code from a version of a game that was provided by TRICE.  There is no way STARLING and STAR STATUS GROUP could have had access to this code if not given a copy of the game file.

49. The fact that STARLING and STAR STATUS GROUP deleted the message proves malicious intent and Defendants' attempt to cover up the theft.

50.     Exhibit J is evidence of chat logs with Defendants that proves that the game file was indeed sent by Defendants.

51.     Exhibit K is evidence that the code snippet from Royale High was sent to third parties by Defendants STARLING and STAR STATUS GROUP.

52.     The highlighted code in this screenshot shows the code that Defendant STARLING, and STAR STATUS GROUP, through STARLING, being distributed to third parties unlawfully and without permission of Plaintiffs.

53.     This code snippet was from the version of the game that TRICE illegally accessed and was screen sharing in Exhibit G.

54.     A copy of the 2 Copyright Registrations for the Royale High game are attached as Exhibit O.

55.     A true and correct copy of the Non-Disclosure Agreement is attached as Exhibit M.

56.     Exhibit N is a copy of a March 23, 2020 cease and desist letter that was issued to all Defendants for them to stop any further use of Plaintiffs'' protected materials, and a demand to stop the production of Crown Academy.

57.     Exhibit M is a copy of a screen shot from Defendants STARLING and STAR STATUS GROUP sharing the protected materials of Plaintiffs without authority or permission.

58.     In this screenshot, Defendants STARLING and STAR STATUS GROUP admits that the sharing of Plaintiffs' materials is unlawful.

**COUNT I-COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS**

**17 U.S.C. §§ 106, et seq. (Direct, Contributory, Vicarious) (Against All Defendants)**

58.     Plaintiffs incorporate paragraphs 1-28 as if fully stated herein.

59.     Plaintiffs are the sole owner of the copyright in an original work that is fixed in tangible media of expression.

60.     The United States Copyright Office accepted two applications for copyright registration for the original work, and attached as Exhibit O.

61.      Upon information and belief, Defendants have produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed Plaintiffs' protected work or derivatives, without consent.

62.     Defendants' acts violate Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including the exclusive rights to produce, reproduce, and distribute copies, to create derivative works, and to publicly display the work.

63.     . Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Plaintiffs' protected copyrighted work.

64.     Because of Defendants' infringing acts, Plaintiffs are entitled to actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act.

65.     Defendants' infringement has caused and is causing irreparable harm to Plaintiffs, for which there is no adequate remedy at law.

66. Unless this Court restrains Defendants from infringing Plaintiffs' protected work, the harm will continue to occur in the future. Accordingly, Plaintiff is entitled to preliminary and permanent injunction.

67. Defendants have access to the works, and there is clear evidence of substantial similarity between the works.

68. Plaintiffs' ROYALE HIGH game creates millions of dollars of revenue per year, and Plaintiffs have suffered damages at, as well as the need for injunctive relief pursuant to 17 U.S.C. § 502 enjoining any uses by Defendants of Plaintiffs' Confidential Materials and to an order under 17 U.S.C. § 503 that any infringing materials be impounded and destroyed.

## COUNT II- BREACH OF THE NON-DISCLOSURE AGREEMENT

69. Plaintiffs incorporate paragraphs 1-68 as if fully stated herein.

70. On June 19, 2019, Plaintiff Ndalamba and Defendant TRICE entered into and executed a Software Development Non-Disclosure Agreement, a copy attached hereto as Exhibit M.

71. Defendant TRICE breached the agreement by amongst other things, disclosing confidential information to Defendants STARLING and STAR STATUS GROUP, amngst others, against the terms and conditions of the agreement, and without exress authority from Plaintiffs.

71. As  result of the breach, Plaintiffs have been damaged, as Defendants are using the confidential information, and parts of the work protected by a copyright registration in the development of the Crown Academy game, resulting in not only enormous financial damages,

bit the loss of confidential information in the hands of wrong doers who are operating unlawfully to Plaintiffs' detriment.

72. Plaintiffs are thus entitled to judgment against Defendant TRICE, including damages and injunctive relief.

### COUNT III- FOR TORTIOUS INTERFERENCE OF A CONTRACTUAL RELATIONSHIP AGAINST DEFENDANTS STARLING AND STAR STATUS GROUP

73. Plaintiff incorporate paragraphs 1-72 as if fully stated herein.

74. An executed agreement by and between Plaintiff Ndalamba and Defendant TRICE exists, and has existed well prior to the acts complained of.

75. Defendants STARLING and STAR STATUS GROUP induced Defendant TRICE to breach the agreement and to disclose to them confidential information covered by the agreement.

76. Defendant TRRICE did in fact disclose unauthorized information in violation of the agreement.

77. Defendants had knowledge of the agreement, and in reckless disregard of Plaintiffs'' rights under the agreement, caused and participated in the breach of the agreement (NDA) by TRICE.

78. Plaintiffs have suffered damages as a result of Defendants' interference resulting in damages, requiring not only economic damages, but also injunctive relief, and as result, Plaintiffs are entitled to their attorneys fees.

### COUNT IV- VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

79. Plaintiffs incorporate paragraphs 1-78 as if fully stated herein.

80. Defendants, in their personal capacity and as agents for Defendant STAR STATUS GROUP, intentionally accessed, by means of conduct involving interstate communication, Plaintiffs' computers without authorization or exceeding their authorized access, and thereby obtained information from protected computers and secured databases in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

81. Defendants knowingly and with intent to defraud, accessed Plaintiffs' protected computers without authorization or exceeding their authorized access and by means of such conduct, furthered their intended fraud, including without limitation their wrongdoing of obtaining Plaintiffs' valuable business information, including confidential, proprietary, and trade secret information, by dishonest methods in violation of the CFAA, 18 U.S.C. § 1030.

82. As a result of Defendants' misconduct and their violations of the CFAA, individually and as agents, have suffered damage or loss, and suffered loss during a one-year period in an amount exceeding $5,000, and are entitled to an award of damages under CFAA § 1030(g) for their multiple breaches of the CFAA.

83. By reason of Defendants' violations of the CFAA, and the damages and/or losses caused and threatened by their misconduct, directly or indirectly through Defendants and their agents and employees, ACR is entitled to damages and injunctive relief under CFAA § 1030(g).

84. In addition to the damages Plaintiffs have suffered, Defendants' accessing and ongoing possession of Plaintiffs' valuable business information, including its confidential, proprietary, and trade secret information, obtained in violation of the CFAA, and use of such information as an employee and agent of, and for the benefit of Defendants poses a real, present and significant threat of unauthorized disclosure and use of this information, and the diversion of clients and

prospective clients with which Plaintiffs enjoy substantial business relationships, to its competitors, Defendants.

85. The further violation by Defendants through themselves, their agents, and employees of their legal obligations by the use or disclosure of Plaintiffs' valuable business information, including confidential, proprietary, and trade secret information, obtained in violation of the CFAA, poses an imminent threat of irreparable injury to ACR. Such injury includes, but is not limited to, the utilization and disclosure of this information.

86. Plaintiffs have no adequate remedy at law for Defendants' accessing and Defendants' ongoing possession of ACR's valuable information in violation of the CFAA.

## COUNT V- MISAPPROPRIATION OF TRADE SECRETS/ VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT

87. Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88. Confidential information relating to Plaintiffs, including but not limited to, Plaintiffs' know-how, and development of the ROYALE HIGH game, technical information, screen shots, images, computer code not otherwise covered by copyright, and other technical information serving as confidential and trade secret information constitute trade secrets protected by Florida's Uniform Trade Secrets Act. Plaintiffs have acted at all times to protect from disclosure these trade secrets.

89. By their actions, Defendants misappropriated and threatened to misappropriate trade secrets in violation of Florida's Uniform Trade Secrets Act, Fla. Stat. Ch. 688.

90. Plaintiffs have no adequate remedy at law, and will suffer substantial and irreparable harm unless Defendants are enjoined as requested below.

91      Defendants' conduct was wanton, willful and malicious, so as to justify the imposition of punitive damages.

WHEREFORE, Plaintiffs demand a trial by jury, and:

An Order requiring A) That judgment be entered declaring that the actions of the Defendants are in violation of law; B). That the Defendants be preliminarily and permanently enjoined from the actions described herein consistent with the law, including but not limited to: (A) Requiring Defendants to immediately return, without retaining any copies or summaries, all of Plaintiffs' documents, property and information taken by the Defendants, and precluding Defendants from infringing Plaintiffs' Copyrighted Works or from using or disclosing Plaintiffs' confidential or proprietary documents or information; C) Precluding Defendants from launching the sale of the CROWN ACADEMY game or any other game derived from the misappropriation of Plaintiffs' Copyrighted Materials, confidential information or trade secrets; and D) Plaintiff further prays that each of the Defendants herein be duly cited to appear and answer this Complaint, after having been served with a copy of same, and that after due proceedings had, there be judgment herein in favor of Plaintiffs and against the Defendants granting a permanent injunction in the form and substance of the preliminary injunction prayed for by Plaintiff, and reserving Plaintiff's damages or other relief for such losses as may have been occasioned by the acts of Defendant.

## VII-PRAYER FOR DAMAGES AND SUCH OTHER RELIEF

Plaintiffs further pray for: A) All damages sustained by it as a result of the wrongful conduct described above, beginning with the earliest date of violation up until the date of the entry of the final judgment in this action; B) Pre- and post-judgment interest; C) Attorneys' fees and costs; and D) Such other and further relief as this Court may deem just and proper.

Dated: June 25, 2020                                    Respectfully submitted,

                                                        By:/s/ Louis R. Gigliotti/
                                                        Louis R. Gigliotti, Esq.
                                                        Louis R. Gigliotti, PA
                                                        Florida Bar No.: 71935
                                                        1605 Dewey Street
                                                        Hollywood, FL 33020
                                                        Ph: (954) 471 4392
                                                        lgigliotti@bellsouth.net


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was filed ECF and served via electronic mail on this 25th day of June, 2020.


                                                        By:    /s/Louis R. Gigliotti
                                                               Louis R. Gigliotti, Esq.