## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| DAVID NDALAMBA, and STARLINE MEDIA, INC.<br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ELISHA TRICE, JOMY STERLING, and STAR STATUS GROUP<br><br>　　　　Defendants. | C.A. No. 6:20-CV-01210-GAP-GJK |
| JOMY STERLING and STAR STATUS GROUP<br>　　　　Counterclaim Plaintiffs,<br><br>　　v.<br><br>DAVID NDALAMBA and TYLER GNASS<br><br>　　　　Counterclaim Defendants. | |

## JOMY STERLING D/B/A STAR STATUS GROUP'S MOTION FOR SUMMARY JUDGMENT

Jomy Sterling d/b/a Star Status Group[1] (collectively, "**Ms. Sterling**"), by and

through her undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby moves

---

[1] As discussed, *infra*, Star Status Group is not a separate legal entity; "Star Status" is just a fictitious name Ms. Sterling uses in connection with her video game Crown Academy on the Roblox platform. *See* **Exhibit A** at ¶ 6. As such, Ms. Sterling and Star Status Group are one and the same and shall be collectively referred to as "**Ms. Sterling**" throughout this Motion.

for summary judgment in her favor and against David Ndalamba ("**Mr. Ndalamba**") (as both a plaintiff and counterclaim defendant), Starline Media Inc. ("**Starline**") (as a plaintiff), and Tyler Gnass ("**Mr. Gnass**") (as a counterclaim defendant). The grounds supporting this Motion are set forth in the Memorandum below.

## PRELIMINARY STATEMENT

Plaintiffs' claims against Ms. Sterling were brought in bad faith and without evidence. This lawsuit and the statements made by Mr. Ndalamba and Mr. Gnass in early 2020 are all part of a swear campaign designed to ruin Ms. Sterling's reputation and the successful publication of her game Crown Academy. As described below, the summary judgment record makes it clear that Plaintiffs cannot prove the elements necessary to prevail at trial against Ms. Sterling. On the other hand, the record clearly shows Mr. Ndalamba and Mr. Gnass defamed Ms. Sterling resulting in substantial lost profits. As such, Ms. Sterling respectfully requests summary judgment against Mr. Ndalamba, Starline, and Mr. Gnass as set forth herein.

## UNDISPUTED MATERIAL FACTS[2]

### The Royale High Video Game

1.     Royale High is a video game publicly available to play on the online platform called Roblox. *See* **Exhibit A** at ¶ 3.

2.     Royale High was created and released by Tarah Uhrich (aka "callmehbob" and "Barbie" online) in early 2017. *See* **Exhibit B**; **Exhibit C** at ¶¶ 6 & 7. Tarah Uhrich's

---

[2] Undisputed material facts will be cited to as "**SOF**" throughout the Motion.

company Secret Waterfall LLC owns the Royale High video game, which consists of source code and related assets. *See* **Ex. C** at ¶¶ 4 & 25; **Exhibit D** at ¶¶ 4 & 24;[3] **Exhibit R**. As such, neither Mr. Ndalamba nor Starline own – or can claim to own – any copyrights in and to Royale High's source code or related assets. *See* **Ex. C** at ¶¶ 3 & 25 and **Ex. D** at ¶¶ 3 & 24.

**Starline's Purported Copyright Registrations were Procured Through Fraud**

3.      Attached to Plaintiffs' Amended Complaint is a copy of U.S. Copyright Registration No. TX 8-868-731, which purports to cover some "YAML code" called "Cloudformations." *See* Dkt. No. 24-15 at p. 1. This registration lists a "Year of Completion" of "2019," a "Date of 1st Publication" of "March 01, 2019," and states that "Starline Media Inc." is both "Author" and "Copyright Claimant" of the "YAML code." *Id.* However, Starline Media Inc. did not exist on March 1, 2019, so it could not be an author, and therefore a copyright claimant, of "YAML code" completed and first published on or before March 1, 2019. *See* **Exhibit E** (showing date of incorporation of August 8, 2019). There is no evidence the "YAML code" purportedly covered by U.S. Copyright Registration No. TX 8-868-731 was acquired, copied, disclosed, or used by Defendants.

---

[3] **Exhibit C** is a true and accurate copy of the Requests for Admission served on David Ndalamba on May 12, 2021. **Exhibit D** is a true and accurate copy of the Requests for Admission served on Starline Media Inc. on May 12, 2021. Neither Mr. Ndalamba nor Starline responded to these requests within 30 days as required under Fed. R. Civ. P. 36(a)(3). Thus, the requests are deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3).

4.     Attached to Plaintiffs' Amended Complaint is a copy of U.S. Copyright Registration No. TX 8-868-249, which purports to cover a "computer program" called "Node." *See* Dkt. No. 24-15 at p. 2. This registration lists a "Year of Completion" of "2019," a "Date of 1st Publication" of "March 01, 2019," and states that "Starline Media Inc." is both "Author" and "Copyright Claimant" of the "computer program." *Id.* However, Starline Media Inc. did not exist on March 1, 2019, so it could not be an author, and therefore a copyright claimant, of a "computer program" completed and first published on or before March 1, 2019. *See* **Ex. E**. The "Node" computer program purportedly covered by U.S. Copyright Registration No. TX 8-868-249 is the Royale High web server source code (the "**RH Web Server Source Code**"), which is owned by Secret Waterfall LLC, not Starline Media Inc. (the purported author and copyright claimant on the "Node" registration). *See* **Ex. D** at ¶¶ 3-4, 17, 24.[4]

5.     Attached to Plaintiffs' Amended Complaint is a copy of U.S. Copyright Registration No. TX 8-868-254, which purports to cover a "computer program" called "Royale High Code" (the "**RH Game Source Code**"). *See* Dkt. No. 24-15 at p. 3. This registration lists a "Year of Completion" of "2018," and states that "Starline Media Inc." is both "Author" and "Copyright Claimant" of the "computer program." *Id.* However, Starline Media Inc. did not exist in 2018, so it could not be an author, and therefore a copyright claimant, of a "computer program" purportedly completed in

---

[4] Plaintiffs identified documents Bates number "Starline Response 00024" through "Starline Response 00162" as being the source code purportedly covered by U.S. Copyright Registration No. TX 8-868-249.

2018. *See* **Ex. E**. Like the RH Web Server Source Code, the RH Game Source Code purportedly covered by U.S. Copyright Registration No. TX-8-868-254 is owned by Secret Waterfall, LLC, not Starline Media Inc. (the purported author and copyright claimant on the "Royale High Code" registration). *See* **Ex. D** at ¶¶ 3-4 & 24.

**Mr. Ndalamba's Relationship with Secret Waterfall LLC**

6.     In mid-2018 (more than a year after Royale High was created and released), Secret Waterfall LLC (the owner of Royale High) hired Mr. Ndalamba as an independent contractor to provide freelance services with respect to the Royale High video game through the online platform "Upwork." *See* **Ex. C** at ¶ 20. As a result of Mr. Ndalamba providing services to Secret Waterfall LLC through the "Upwork" platform, Mr. Ndalamba agreed to the "Optional Service Contract Terms" found on the "Upwork" website (the "**Upwork Terms**"). *See* **Exhibit F** at p. 1.[5]

7.     Under the Upwork Terms, Mr. Ndalamba agreed to the following provision with respect to his work on Royale High: "Upon Freelancer's receipt of full payment from Client, the Work Product[6] (except for any Background Technology), including without limitation all Intellectual Property Rights in the Work Product (except for any Background Technology), will be the sole and exclusive property of Client, and

---

[5] Plaintiffs did not produce any documents showing that Mr. Ndalamba and Secret Waterfall LLC agreed to terms that differ from or conflict with the Upwork Terms. *See* **Ex. F** at p. 1 ("[I]f and to the extent that the Users who are party to a Service Contract have not agreed to different terms, then they agree to incorporate these Optional Terms.").

[6] Under the Upwork Terms, "Work Product" means "any tangible or intangible results or deliverables that Freelancer agrees to create for, or actually delivers to, Client as a result of performing the Freelancer Services, including, but not limited to, configurations, computer programs, or other information, or customized hardware, and any intellectual property developed in connection therewith." **Ex. F** at p. 11.

Client will be deemed to be the author thereof. If Freelancer has any Intellectual Property Rights to the Work Product that are not owned by Client upon Freelancer's receipt of payment from Client, Freelancer hereby automatically irrevocably assigns to Client all right, title and interest worldwide in and to such Intellectual Property Rights." **Ex. F** at p. 5. Mr. Ndalamba has been fully paid by Secret Waterfall LLC for his work on Royale High at least through March 1, 2019 (the latest source code completion date identified on the copyright registrations attached to the Amended Complaint). *See* **Exhibit G**.

8.      With respect to "Background Technology," the Upwork Terms state, "Freelancer will disclose in the Engagement terms any Background Technology which Freelancer proposes to incorporate into Work Product or upon which use or distribution will depend. If Freelancer discloses no Background Technology, Freelancer warrants that it will not incorporate any Background Technology into Work Product provided pursuant thereto." **Ex. F** at p. 4. None of the Work Product provided to Secret Waterfall LLC by Mr. Ndalamba contains "Background Technology."[7]

**Elisha Trice's Work on Royale High**

9.      During the time period from April 2019 to August 2019, Mr. Ndalamba asked Elisha Trice on two separate occasions to help him with Royale High-related projects. *See* **Exhibit H** at ¶ 4.

---

[7] None of the documents produced by Plaintiffs in discovery show a disclosure of "Background Technology" by Mr. Ndalamba to Secret Waterfall LLC.

10.     In April of 2019, Mr. Ndalamba hired Mr. Trice to help clean up the RH Web Server Source Code. *See* **Ex. H** at ¶ 5. Mr. Trice needed access to the RH Web Server Source Code in order to work on it. *Id*. at ¶ 6. Mr. Ndalamba provided Mr. Trice with a copy of the RH Web Server Source Code on or around April 25, 2019. *Id*. at ¶ 7. Mr. Trice was not subject to the NDA attached to the Amended Complaint at Dkt. No. 24-13 when Mr. Ndalamba provided Mr. Trice with access to the RH Web Server Source Code. *See* **Ex. C** at ¶ 9; **Ex. H** at ¶ 7.

11.     In order to work on the RH Web Server Source Code, Mr. Trice had to store the source code in his private GitHub repository. *See* **Ex. C** at ¶¶ 10 & 32; **Ex. H** at ¶ 8. A GitHub repository is a digital storage locker for source code. *See* **Ex. H** at ¶ 9.

12.     The RH Web Server Source Code consists of standard, publicly available, and widely used lines of code called node.js code. *See* **Ex. C** at ¶ 13; **Ex. H** at ¶ 13. The RH Web Server Source Code was easy for Mr. Trice to work on because he had worked with similar, if not identical, code prior to helping Mr. Ndalamba with the code. *See* **Ex. H** at ¶ 13; *see also* **Ex. C** at ¶ 17. Plaintiffs do not own node.js code. See **Ex. C** at ¶ 14 and **Ex. D** at ¶ 13. Indeed, many developers use the code to create web servers virtually identical to the web server Royale High uses and that Mr. Trice worked on. *See* **Ex. H** at ¶ 13; **Exhibit I**.

13.     In June of 2019, Mr. Ndalamba enlisted Mr. Trice again to help fix bugs associated with Royale High datastore strings that were not saving properly. *See* Dkt Nos. 24-5 and 24-6; **Ex. H** at ¶ 14. In order to complete this project Mr. Trice needed a copy

a Royale High place file. *See* **Ex. H** at ¶ 14. Mr. Ndalamba provided Mr. Trice with a Royale High place file called "royalehigh.rbxl" on June 19, 2019 (the "**RH Place File**"). *See* Dkt. No. 24-5; **Ex. H** at ¶ 15.

14.     Mr. Ndalamba had Mr. Trice sign a NDA before he gave Mr. Trice the RH Place File. *See* Dkt Nos. 24-4, 24-5, and 24-13 (the "**Software Development NDA**"). Mr. Trice executed the Software Development NDA on June 19, 2019. *Id.*  The restrictions set forth in the Software Development NDA do not apply to the following information: "(a) information generally available to the public; (b) widely used programming practices or algorithms; (c) information rightfully in the possession of the Parties prior to signing [the] Agreement; and information independently developed without the use of any of the provided Confidential Information." Dkt. No. 24-13.

15.     Plaintiffs admit that not everyone who gains access to Royale High source code or assets is asked to sign or otherwise agree to a NDA. *See* **Ex. C** at ¶¶ 35-36 and **Ex. D** at ¶¶ 33-34. Mr. Ndalamba never demanded the RH Place File or RH Web Server Source Code to be returned or directed Mr. Trice to delete the information. *See* **Ex. H** at ¶ 25.

16.     Mr. Trice completed the Royale High work in August of 2019. *See* **Ex. H** at ¶ 17. The RH Web Server Source Code and the RH Place File Mr. Trice received from Mr. Ndalamba are the only Royale High materials Mr. Trice has ever possessed. *Id*. Mr. Trice has never accessed a Royale High account or downloaded Royale High place files or source code without permission. *Id*.

**Star Status Group and the Crown Academy Project**

17.    Despite being listed as a party to this action, Star Status Group is not a separate legal entity; "Star Status" is just a fictitious name of a Roblox account that Ms. Sterling uses to publish the Crown Academy game on Roblox. *See* **Ex. A** at ¶ 6. Ms. Sterling is the sole owner and administrator of the "Star Status" Roblox account. *Id*.

18.    Crown Academy is a video game published on the Roblox platform. Ms. Sterling started developing Crown Academy in late 2018. A playable version of the game was released in August of 2020. *See* **Ex. A** at ¶ 4.

19.    To help develop Crown Academy, Ms. Sterling hired Tyler Gnass as an independent contractor in early 2019 to be the game's lead scripter/programmer. *See* **Ex. A** at ¶ 7. Mr. Gnass was the lead scripter/programmer on the Crown Academy project from February 2019 to December 2019. *See* **Exhibit J** at ¶ 4.[8] As the project's lead scripter, Mr. Gnass authored all the source code for Crown Academy in 2019. *Id.* at ¶ 5.

20.    At Mr. Gnass' request, Ms. Sterling, in August of 2019, hired Mr. Trice as an independent contractor to assist Mr. Gnass as needed. *See* **Ex. A** at ¶ 8; **Ex. H** at ¶ 18. Mr. Trice assisted Mr. Gnass until Mr. Gnass' was let go from the project in December of 2019. *See* **Ex. A** at ¶ 8; **Ex. H** at ¶ 18.

---

[8] **Exhibit J** is a true and accurate copy of the Requests for Admission served on Tyler Gnass on May 12, 2021. Mr. Gnass did not respond to these requests within 30 days as required under Fed. R. Civ. P. 36(a)(3). As such, the requests are deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3).

21.     Ms. Sterling neither knew nor had reason to know about the Software Development NDA between Mr. Trice and Mr. Ndalamba when she hired Mr. Trice. *See* **Ex. A** at ¶ 9; **Ex. H** at ¶ 19. Plaintiffs admit there is no evidence showing that Ms. Sterling knew about the Software Development NDA at any time prior to Plaintiffs filing the instant lawsuit. *See* **Ex. C** at ¶ 26; **Ex. D** at ¶ 25; **Ex. J** at ¶ 19. In any event, Ms. Sterling never directed Mr. Trice to breach the NDA he had with Mr. Ndalamba or to otherwise steal Royale High code, assets, or information. *See* **Ex. A** at ¶ 10; **Ex. H** at ¶ 19; **Exhibit K**.

22.     Mr. Trice never provided the RH Web Server Source Code to Ms. Sterling or otherwise used it in connection with his work on Crown Academy. *See* **Ex. A** at ¶ 11; **Ex. H** at ¶ 10.

23.     Ms. Sterling has never had access to Mr. Trice's private GitHub repository and did not know that his repository contained a copy of the RH Web Server Source Code. *See* **Ex. A** at ¶ 12; **Ex. H** at ¶ 11.

24.     The RH Web Server Source Code is not, nor has it ever been, in the Crown Academy source code. *See* **Ex. A** at ¶ 13; **Ex. C** at ¶¶ 1-2, 10-11;[9] **Ex. H** at ¶ 12; **Ex. J** at ¶¶ 1-2, 5-6, 10-11;[10] **Exhibit L** at ¶¶ 5-7.

25.     Mr. Trice did not provide the RH Place File to Ms. Sterling or otherwise use any information contained on the file in connection with his work on Crown Academy. *See* **Ex. A** at ¶ 14; **Ex. H** at ¶ 16.

---

[9] Starline Response 14887 is also attached to the Amended Complaint at Dkt. No. 24-2.
[10] Starline Response 14887 is also attached to the Amended Complaint at Dkt. No. 24-2.

26.     Mr. Trice did not provide Ms. Sterling with the file called "roy-alehigh_1_940838533.rbxl" that is identified in the screenshot attached to the Amended Complaint at Dkt. No. 24-8. *See* **Ex. A** at ¶ 13; **Ex. H** at ¶ 20.

27.     The only information Ms. Sterling saw within the file called "roy-alehigh_1_940838533.rbxl" were Roblox asset IDs that are publicly available to all Roblox developers for use in their games (the "**Roblox Asset IDs**"). *See* Ex. A at ¶ 15; **Ex. C** at ¶ 23; **Ex. D** at ¶ 22.[11] In any event, the Roblox Asset IDs contained within the "royalehigh_1_940838533.rbxl" file were never used or otherwise incorporated into Crown Academy. *See* **Ex. A** at ¶ 16; **Ex. J** at ¶¶ 5-6; **Ex. L** at ¶¶ 5-7.

28.     On December 15, 2019, Mr. Gnass, knowing Mr. Trice had the RH Place File, directed Mr. Trice to open up the file and screen share it so he could see how a certain Royale High game mechanic worked. *See* **Ex. H** at ¶ 22. Mr. Trice did as he was told and started a screen share through a Discord chat room. *Id.* The Discord chat room Mr. Trice used for the screen share was a general chat room that was frequently used by himself and his contacts to discuss miscellaneous issues throughout the day. *Id.*; *see also* **Ex. A** at ¶ 18. The exhibit attached to the Amended Complaint at Dkt. No. 24-7 shows the December 15, 2019 screen share that Mr. Trice started at the behest of Mr. Gnass. *See* **Ex. H** at ¶ 22. The only individuals in the Discord chat room when the screen share started were Mr. Trice and Mr. Gnass. *Id.*; *see also* **Ex. A** at ¶ 18. Sometime after the screen share started, Ms. Sterling entered the Discord chat

---

[11] Starline Response 15002 is also attached to the Amended Complaint at Dkt. No. 24-8.

room as she normally did to see how things were going with Mr. Trice. *See* **Ex. A** at ¶ 18; **Ex. H** at ¶ 22. Ms. Sterling had no idea Mr. Trice was going to screen share the RH Place File with Mr. Gnass. *See* **Ex. A** at ¶ 19; **Ex. H** at ¶ 22. Ms. Sterling did not notice the screen share right away or know exactly what Mr. Trice was screen sharing until Mr. Gnass texted her about what Mr. Trice was screen sharing. *See* **Ex. A** at ¶ 18; Dkt No. 24-12. As soon as Ms. Sterling understood what was happening, she immediately directed Mr. Trice to stop screen sharing the file and directed both Mr. Trice and Mr. Gnass never to use Royale High materials (such as source code) in connection with the Crown Academy project. *See* **Ex. A** at ¶ 18; **Ex. H** at ¶ 23. Mr. Trice has not accessed or shared the RH Place File with anyone since December 15, 2019. *See* **Ex. H** at ¶ 24.

29.     Ms. Sterling did not see anything during the screen share except for visual elements of a video game that are observable to anyone that publicly plays the game on the Roblox platform. *See* **Ex. A** at ¶ 20; *see also* **Ex. C** at ¶ 37. In any event, Ms. Sterling has never used anything she briefly (and accidently) observed during the screen share in Crown Academy. *See* **Ex. A** at ¶ 20.

30.     Shortly after the December 15, 2019 screen share incident, Ms. Sterling terminated her relationship with Mr. Gnass because he refused to provide the services he agreed to provide (despite being paid for those services) and tried (through lies) to

frame Mr. Trice for using stolen Royale High materials (such as the RH Web Server Source Code) in Crown Academy when he was not. *See* **Ex. A** at ¶ 21; **Ex. H** at ¶ 21.[12]

31.     In January of 2020, Ms. Sterling hired Max Gartung to replace Mr. Gnass as lead scripter/programmer. *See* **Ex. A** at ¶ 22; **Ex. L** at ¶ 4. Mr. Gartung has written all source code for Crown Academy since being hired in January of 2020, replacing all the source code Mr. Gnass authored in 2019. *See* **Ex. L** at ¶ 5. Mr. Gartung's code is not based on and does not otherwise incorporate any Royale High code, assets, or information. *Id.* at ¶ 6. Mr. Gartung has never had access to any Royale High source code or related information. *Id.* at ¶ 7.

32.     Simply put, Crown Academy has never included or otherwise incorporated any Royale High code, assets, or information. *See* **Ex. A** at ¶ 13; **Ex. C** at ¶¶ 1-2; **Ex. D** at ¶¶ 1-2; **Ex. H** at ¶¶ 10, 16; **Ex. J** at ¶ 1-2, 4-6; **Ex. L** at ¶¶ 5-7.

### Mr. Ndalamba and Mr. Gnass Defame Ms. Sterling

33.     Shortly after Mr. Gnass was let go from the Crown Academy project, Mr. Gnass and Mr. Ndalamba, on February 5, 2020, made defamatory statements about Ms. Sterling to each other and another person that were ultimately published by way of the online video platform YouTube. *See* **Exhibit M[13] and Exhibit N**.

34.     Mr. Gnass made the following statements about Ms. Sterling in the published YouTube video: (a) she has "stolen shit from other people" and "scammed people,"

---

[12] Also, in hindsight, it now appears that Mr. Gnass pressured Mr. Trice into screen sharing the RH Place File so that he could get a screenshot of the screen share to frame both Ms. Sterling and Mr. Trice for using stolen Royale High materials in Crown Academy.

[13] This exhibit provides a link to a video file of the YouTube video.

*see* **Ex. M** at 7:50; (b) she has stolen assets from me, *see* **Ex. M** at 34:22; and (c) she "stole the Royale High shop," *see* **Ex. M** at 36:58.

35.     Mr. Ndalamba made the following statements about Ms. Sterling in the published YouTube video: (a) she "has ruined" other peoples' lives, *see* **Ex. M** at 2:00; (b) she has "stolen stuff" and "gotten people to steal stuff" for her, *see* **Ex. M** at 8:10; (c) we have a massive amount of evidence of Ms. Sterling's theft, *see* **Ex. M** at 13:34; and (d) I wouldn't be surprised if she swatted someone or physically harmed some, *see* **Ex. M** at 39:08.

36.     Mr. Ndalamba also tweeted out a link to a Twitlonger post that stated Ms. Sterling stole "copies of Royale High in the production of Crown Academy," that Ms. Sterling was "aware and supportive of [Mr. Trice's] theft, and that Ms. Sterling "instructed [Mr. Trice] to steal because she knew that he had access to [Royale High]." *See* **Exhibit O**. The Twitlonger post has been retweeted 144 times and has 1,257 likes. *Id.*

37.     Both Mr. Gnass and Mr. Ndalamba both knew that their statements about Ms. Sterling would induce others to not play her game. *See* **Ex. M** at 4:30.

38.     Both Mr. Gnass and Mr. Ndalamba knew prior to making the statements about Ms. Sterling that they had no evidence showing (a) that Ms. Sterling stole any Royale High code or assets, (b) that she directed Mr. Trice to steal said code or assets, or (c) that Crown Academy contained or otherwise incorporated any Royale High code or assets. *See* **Ex. C** at ¶¶ 1-2, 26-27; **Ex. J** at ¶¶ 1-2, 4-6, 16-19.

39.     Mr. Ndalamba admitted that he did not possess actual Crown Academy source code or assets before making the above statements to determine if Crown Academy source code actually contained Royale High code. *See* **Ex. C** at ¶ 38 and **Ex. D** at ¶ 37. Both Mr. Ndalamba and Starline admit that they have never had access to or possessed actual Crown Academy source code or assets. *Id.*

40.     Mr. Gnass knew Ms. Sterling did not steal any Royale High code or assets before making the false statements about Ms. Sterling on February 5, 2020 because he was the lead programmer on Crown Academy during 2019 and admits his code was not based on Royale High code, assets, or information. *See* **Ex. J** at ¶¶ 4-6.

**<u>Damages</u>**

41.     Mr. Ndalamba and Starline are not entitled to any profits that are generated by the Royale High video game. *See* **Ex. C** at ¶ 8 and **Ex. D** at ¶ 7.

42.     There is no evidence that Mr. Ndalamba's hourly wages for services performed in connection with Royale High either decreased or completely ceased as a result of Mr. Trice's alleged breach of the Software Development NDA.

43.     The average profit generated by each Crown Academy user is $37.74. *See* **Ex. A** at ¶ 23.

44.     As a result of Mr. Gnass and Mr. Ndalamba's public statements accusing Ms. Sterling of theft, a "Get Crown Academy taken down from ROBLOX" petition was created and posted online. The petition states, "This game [*i.e.*, Crown Academy] is full of stolen assets and scripts and should be terminated." *See* **Exhibit P**. The peti-

tion was signed by 1,857 individuals who indicated they would not play Crown Academy and wanted it terminated. *Id.*

45.     At least nine videos republishing Mr. Gnass and Mr. Ndalamba's false allegations of theft have been posted on YouTube. These videos have garnered at least 239,550 views. *See* **Exhibit Q.**

46.     Ms. Sterling has lost upwards of $9,110,700 in Crown Academy profit as a result of Mr. Gnass and Mr. Ndalamba's false allegations of theft. *See* SOF Nos. 43-45.

## LEGAL STANDARD

Motions for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the motion party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

## MS. STERLING'S MOTION FOR SUMMARY JUDGMENT

Ms. Sterling moves for summary judgment in her favor on Mr. Ndalamba and Starline's claims of copyright infringement (Count I), tortious interference with contractual relationship (Count III), and trade secret misappropriation under Florida's Uniform Trade Secret Act (FUTSA) (Count IV), as alleged in the Amended Complaint at Dkt. No. 24, and summary judgment against Mr. Ndalamba and Mr. Gnass on her claims for defamation (Count I) and trade libel (Count II), as alleged in her Counterclaims at Dkt. No. 20.

A. **Summary Judgment Should be Entered in Ms. Sterling's Favor on Plaintiffs' Copyright Claim (Count I)**

Plaintiffs allege Ms. Sterling engaged in copyright infringement under the U.S. Copyright Act (17 U.S.C. § 106, et seq.) (Count I). [Dkt. No. 24 at pp. 9-10]. In order to prevail on a copyright claim, a plaintiff must show two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). In a copyright infringement case, the Court must grant summary judgment for defendants if "no reasonable jury upon proper instruction would find the works substantially similar." *Thompson v. Looney's Tavern Prods., Inc.*, 204 Fed. App'x 844, 849 (11th Cir. 2006), quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999). Plaintiffs cannot make either showing.

  1. **Plaintiffs do not own copyrights in and to the Royale High source code.**

While a copyright registration provides a plaintiff-registrant with "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," 17 U.S.C. § 410(c), the presumptions a registration provides can be rebutted. *See 3 Nimmer on Copyright* § 12.11 (2021). Here, Plaintiffs submitted three copyright registrations purportedly covering the source code Ms. Sterling allegedly stole. The registrations list "Starline Media Inc." as the "author" and "copyright claimant." (SOF 3-5). However and despite what the copyright registrations say on their face, the summary judgment record unequivocally shows that Plaintiffs are not the owner of the

copyrights in and to the Royale High source code. Specifically, Plaintiffs admit they do not own the Royale High source code (and that it is in fact owned by another company called Secret Waterfall LLC) (SOF 2); Starline Media Inc. did not exist when the source code purportedly covered by the registrations was completed (SOF 3-5); and Mr. Ndalamba agreed that any code he authored in connection with Royale High would be owned by Secret Waterfall LLC (SOF 6-8). Thus, Plaintiffs do not own the copyrights relevant to this case and as a result cannot make out a case of copyright infringement against Ms. Sterling.[14]

### 2. Crown Academy does not consist of any Royale High source code therefore there can be no substantial similarity between the works.

To prevail on a copyright infringement claim, a plaintiff must provide sufficient evidence to show its work and the allegedly infringing work are substantially similar. *Herzog*, 193 F.3d at 1247-1248. To show substantial similarity, a plaintiff must establish that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) (internal quotation omitted). To satisfy the "average lay observer" test, the plaintiff must provide a copy of the allegedly infringing work (here, source code) for side-by-side comparison with plaintiff's

---

[14] It is clear here that Plaintiffs sought registration of the Royale High source code in Starline Media Inc.'s name as copyright claimant knowing (and concealing from the Copyright office) that Secret Waterfall LLC is the owner of the code and that Starline Media Inc. did not exist at the time the source code purportedly covered by the registrations was created. (SOF 2-5). The registrations should be invalidated as a result. *See Roberts v. Gordy*, 877 F.3d 1024, 1030 (11th Cir. 2017). Without these registrations, Plaintiffs' copyright claim must be dismissed. *See Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019).

work. *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003); *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) (plaintiff failed to establish infringement because she did not (or could not) introduce copies of the works in suit for side-by-side comparison).

No reasonable jury could find substantial similarity here because there is absolutely no evidence that Ms. Sterling's Crown Academy source code contains any Royale High source code (*i.e.*, the code purportedly covered by the three copyright registrations attached to the Amended Complaint). Indeed, the two individuals who authored all of the Crown Academy source code to date both admit and/or declare that the Crown Academy source code does not contain Royale High source code. (SOF 24, 31-32). Further, Plaintiffs do not have any copies of the Crown Academy source code that show it consists of or otherwise incorporates Royale High source code. (SOF 39). Thus, even if Plaintiffs own copyright in the relevant source code, there is no evidence upon which a reasonable jury could find for Plaintiffs on the issue of substantial similarity. In light of the foregoing discussion, the Court should enter summary judgment on Plaintiffs' copyright claim in favor of Ms. Sterling by dismissing said claim with prejudice.[15]

## B. Summary Judgment Should be Entered in Ms. Sterling's Favor on Plaintiffs' Tortious Interference with Contract Claim (Count III)

---

[15] The Court should dismiss Plaintiffs' remaining state-law counts for lack of jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

Plaintiffs allege Ms. Sterling tortiously interfered with a non-disclosure agreement between Mr. Ndalamba and Elisha Trice (Count III). [Dkt. No. 24 at pp. 11-12]. In order to prevail on a tortious interference with contract claim, a plaintiff must prove the following elements: "(1) the existence of an enforceable contract, (2) the defendant's knowledge of that contract, (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages." *Mariscotti v. Merco Grp. at Akoya, Inc.*, 917 So.2d 890, 892 (Fla. 3d DCA 2005). The Plaintiffs here cannot prove elements (2), (3), and (4) based on the undisputed material facts in the record.

### 1. Ms. Sterling did not know about the NDA.

Plaintiffs cannot make out element (2) because Ms. Sterling and Mr. Trice's uncontroverted testimony via declaration make clear Ms. Sterling neither knew nor had reason to know about the Software Development NDA between Mr. Trice and Mr. Ndalamba when she hired Mr. Trice. (SOF 21). In fact, Plaintiffs admit there is no evidence showing that Ms. Sterling knew about the Software Development NDA at any time prior to Plaintiffs filing the instant lawsuit. *Id.*

### 2. Ms. Sterling did not induce Mr. Trice's alleged breach of the NDA.

Plaintiffs cannot make out element (3) because the record evidence shows Ms. Sterling never directed Mr. Trice to breach the NDA he had with Mr. Ndalamba or to otherwise steal Royale High code, assets, or information. (SOF 21). Further, there is no evidence that Mr. Trice breached the Software Development NDA by disclosing

"Confidential Information" to Ms. Sterling. If Plaintiffs cannot show that the information Mr. Trice allegedly disclosed to Mr. Sterling qualifies as "Confidential Information" under the Software Development NDA, they cannot prevail on their tortious interference claim against Ms. Sterling. *See Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So.2d 810, 814 (Fla. 2d DCA 2002) (tortious interference with contract requires a plaintiff to show an actual breach of the underlying contract).

### 3.  Mr. Trice's alleged breach of the NDA (if any) did not result in actual damage to Plaintiffs.

The plaintiff must prove "damages resulting from the breach"—that is, that the plaintiff's damages were proximately caused by the breach. *See Chipman v. Chonin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992) ("In breach of contract actions, a plaintiff may recover only if the damages were a proximate result of the breach."). Even if Plaintiffs show Mr. Trice breached the Software Development NDA and Ms. Sterling unlawfully induced that breach, Plaintiffs cannot satisfy element (4) because there is no evidence that Plaintiffs suffered damage as a result of Mr. Trice allegedly breaching the NDA. Indeed, Plaintiffs admit that they do not own the Royale High game and are not entitled to any profits generated by the game, so they did not and could not lose profits due to a breach of the NDA. (SOF 2, 41). Further, not only does the record indisputably show Crown Academy has never used Royale High code or assets (SOF 32), Plaintiffs did not produce any expert testimony or reports concerning the value of any information allegedly disclosed by Mr. Trice to Ms. Sterling. And, there

is no evidence that Plaintiffs' wages from work on Royale High either decreased or ceased as a result of a breach. (SOF 42). Thus, Plaintiffs cannot make out a tortious interference with contract claim.

## C. Summary Judgment Should be Entered in Ms. Sterling's Favor on Plaintiffs' Trade Secret Misappropriation Claim (Count IV)

Plaintiffs allege Ms. Sterling misappropriated their trade secrets under Florida's Uniform Trade Secrets Act, Fla. Stat. Chp. 688 ("**FUTSA**") (Count IV). [Dkt. No. 24 at pp. 12-13]. A plaintiff must prove the following elements to prevail on a FUTSA claim: (1) plaintiff possessed information that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; (2) plaintiff engaged in reasonable efforts to maintain the secrecy of the trade secret information it possessed; and (3) defendant misappropriated the trade secret information possessed by plaintiff by either acquisition, disclosure, or use. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018); Fla. Stat. §§ 688.002(2) & (4). Plaintiffs cannot prove any of the required elements.

### 1. The information Ms. Sterling allegedly acquired, disclosed, or used is not trade secret information.

In a trade secret action, the plaintiff bears the burden of demonstrating the specific information it seeks to protect is a trade secret. *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998). Here, Plaintiffs cannot satisfy this burden because they have not provided any evidence that any of the information Ms. Sterling allegedly acquired, disclosed, or used derives independent eco-

nomic value from not being generally known or readily ascertainable. In fact, the record evidence shows otherwise. Plaintiffs admit that the only information Ms. Sterling acquired and provided to Mr. Gnass on October 3, 2019 was publicly available on the Roblox platform (SOF 27). Further, the RH Web Server Source Code that was allegedly used in Crown Academy without authorization is not "confidential information" under the Software Development NDA (because it was lawfully acquired by Mr. Trice prior to the NDA's execution date of June 19, 2019) (SOF 10, 14),[16] and is (and has always been) publicly available and widely used by other Roblox developers to create web servers similar, if not identical, to the Royale High web server. (SOF 12). Last, the visual elements Ms. Sterling briefly (and accidently) observed during the December 15, 2019 screen share incident are visual elements of the Royale High game that anyone that plays the game publicly can observe. (SOF 29). Therefore, Plaintiffs cannot and will not be able to prove the relevant information here qualifies for trade secret protection.

**2. Assuming the information qualifies as a trade secret, Plaintiffs failed to reasonably protect the information's secrecy.**

Plaintiffs admit that not everyone who has access to a Royale High place file and/or source code is subject to a non-disclosure agreement. (SOF 15). Further, Mr. Ndalamba provided the RH Web Server Source Code to Mr. Trice prior to Mr. Trice signing the Software Development NDA on June 19, 2019. (SOF 10, 14). Mr. Nda-

---

[16] The Software Development NDA states that "Confidential Information" does not include "information rightfully in the possession of the Parties prior to signing this Agreement." (SOF 14).

lamba never demanded the return of the RH Place File or RH Web Server Source Code (SOF 15). As such, Plaintiffs cannot show they have taken the reasonable steps necessary to protect the secrecy of the information at issue. *Cf. Yellowfin Yachts*, 898 F.3d at 1300.

### 3. Ms. Sterling did not acquire, disclose, or use Plaintiffs' alleged trade secret information.

The record evidence is clear: Mr. Trice did not provide the RH Place File (or any place file for that matter) or the RH Web Server Source Code to Ms. Sterling or otherwise use the information on the file or in the source code in connection with his work on Crown Academy (SOF 22-23, 25). Simply put, Crown Academy has never included or otherwise incorporated any Royale High code, assets, or information (SOF 32). Therefore, Plaintiffs cannot prove that Ms. Sterling misappropriated any purported Royale High trade secret information under Florida law.

### D. Summary Judgment Should be Entered in Ms. Sterling's Favor on Her Defamation Counterclaim

There is no genuine dispute of material fact that Mr. Ndalamba and Mr. Gnass defamed Ms. Sterling. To prevail on a defamation claim, Ms. Sterling must prove the following: (1) publication, (2) of a false statement of fact about plaintiff, (3) that is defamatory, (4) with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person, and (5) that results in actual damages. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Here, both Mr. Ndalamba and Mr. Gnass publicly accused Ms. Sterling of stealing Royale High materials – directly or by directing others to do it for her –

knowing she did not (SOF 33-40). These false allegations have rippled through the
Roblox community and caused thousands of individuals to boycott and condemn
Ms. Sterling's Crown Academy game (SOF 44-45). As a result, Ms. Sterling has rea-
sonably lost upwards of $9,110,700 in Crown Academy profit (SOF 46). Thus, sum-
mary judgment should enter against Mr. Ndalamba and Mr. Gnass on Ms. Sterling's
defamation claim incorporating the relief requested in Ms. Sterling's counterclaims
[Dkt. No. 20 at pp. 8-9].

E.   **Summary Judgment Should be Entered in Ms. Sterling's Favor on Her Trade
Libel Counterclaim**

Similarly, there is no genuine dispute of material fact that Mr. Ndalamba and
Mr. Gnass' statements about Ms. Sterling and her game constitute trade libel. To
prevail on a trade libel claim, Ms. Sterling must show the following: (1) that one who
published or communicated a falsehood about the plaintiff (a) knew, or reasonably
should have known, that (b) the falsehood would induce others not to deal with the
plaintiff; (2) that the falsehood did, in fact, play a material and substantial part in in-
ducing others not to deal with the plaintiff; and (3) which caused the plaintiff to suf-
fer special damages. *Global Tech LED, Ltd. Liab. Co. v. HiLumz Int'l Corp.*, No. 2:15-cv-
553-FtM-29CM, 2017 U.S. Dist. LEXIS 20512, at *25-26 (M.D. Fla. Feb. 14, 2017). The
same undisputed facts that support Ms. Sterling's defamation claim support her
trade libel claim. Thus, summary judgment should enter against Mr. Ndalamba and
Mr. Gnass on Ms. Sterling's trade libel claim incorporating the relief requested in Ms.
Steling's counterclaims [Dkt. No. 20 at pp. 8-9].

## CONCLUSION

WHEREFORE, Plaintiffs' claims against Ms. Sterling and Star Status Group should be dismissed with prejudice and summary judgment should enter against Mr. Ndalamba and Mr. Gnass on Ms. Sterling's claims of defamation and trade libel, incorporating the relief requested in Ms. Sterling's counterclaims [Dkt. No. 20 at pp. 8-9].

DATED: August 2, 2021    Respectfully submitted

           Jomy Sterling AND
           Star Status Group
           By Their Attorney,
           /s/ Shaun P. Keough
           Shaun P. Keough (Trial Counsel)
           Florida Bar  # 1000985
           PARKER KEOUGH LLP
           3505 Lake Lynda Dr. Suite 200
           Orlando, FL 32817
           Tel.: (321) 262-1146
           Fax.: (617) 963-8315
           E-mail: skeough@parkerkeough.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Court using the Court's ECF System which will electronically serve a copy on August 2, 2021 on all counsel of record.

           BY: /s/ Shaun P. Keough
           Shaun P. Keough (Trial Counsel)
           Florida Bar  # 1000985