UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.: 6:20-CV-01210-GAP-GJK

**DAVID NDALAMBA, an individual resident
of Canada, and STARLINE MEDIA, INC., a
Canadian corporation,
Plaintiffs,**
v.
**ELISHA TRICE, an individual resident of Florida,
JOMY STERLING, an individual resident of Florida,
and STAR STATUS GROUP, a company of
unknown residency,
Defendants.**
_____/

### PLAINTIFFS' DAVID NDALAMABA, STARLINE MEDIA INC.'S AND THIRD PARTY DEFENDANT TYLER GNASS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

COME NOW, Plaintiffs' DAVID NDALAMBA, STARLINE MEDIA INC., and Third Party Defendant TYLER GNASS, and move the Court to enter an Order denying Defendants Motion for Summary Judgment, and as for grounds, state as follows:

**I. INTRODUCTION.**

To be clear, Plaintiffs do not claim to be the owner of the Royale High video game. That game comprises substantial and original work, including computer code written by, and for, it by others.  However, Plaintiffs are the owner of its own original code that was written by them, and that code is subject to three US Copyright Registrations, and that is the basis of Plaintiffs' claims.  The code Plaintiff wrote is part of the Royale High game and Plaintiffs are the owner of it.

Plaintiffs allege that Defendants hired a former programmer for Plaintiffs, ELI TRICE, known to be under an NDA (Non-Disclosure Agreement) with Plaintiffs, and that Mr. Trice

1

knowingly had access to Plaintiffs' code and used the code in the creation of the Crown Academy game. Crown Academy is so similar to Royale High in so many respects that the game failed to be accepted in the marketplace by Players who found it to merely be a knock-off of Royale High, and Players did not want to play Crown Academy when they could play the original. Royale High received exponentially higher game plays than Crown Academy, and at any given time, there will be over 45,000 players on Royale High to maybe 300 on Crown Academy.

Defendants, without permission or authority worked together to use Plaintiffs' proprietary materials to create their game, and in doing so, committed unlawful acts, including copyright infringement, tortious interference, and trade secret theft. A former programmer for Defendants, TYLER GNASS, came forward and informed Plaintiffs about the theft, and in an act of retaliation, Defendants sued him for defamation. The evidence overwhelmingly supports that Defendants accessed the materials, and created works so similar as to shoot themselves in the feet by creating a knock-off game that not many desire to play.

Importantly, Plaintiffs brought this action mainly because they seek the right of attribution afforded to them by the Copyright Act. The creation of the Crown Academy game used Plaintiff's materials, and they created either derivative works or works that incorporate Plaintiffs' materials, and Plaintiffs have the exclusive right to create works and to use the materials at their own choosing. Defendants have reaped what they have not sewn, and Plaintiffs have the right to cause the cessation of, and make them accountable, for the use of the materials by Defendants.

For purposes of this Response to Defendants' Motion for Summary Judgment, there a is so much information, evidence, exhibits in support, and Declaration evidence, that Summary Judgment is simply inappropriate and not founded in the law.

Currently pending is Plaintiffs' Motion to Withdraw/Deem Responses to Admissions as Timely Filed (Doc. No. 64), and much of the "evidence" and "facts" in support of Summary Judgment are the result of Requests for Admissions that were propounded with Responses due a mere 18 days before discovery closed.   In the absence of material being deemed admitted, Defendants have produced no real substantive evidence or facts in support.

## II. **RELEVANT FACTS** .

Attached hereto as Exhibit A and B is the Declaration of David Ndalamba, personally, and for Plaintiff, STARLINE MEDIA.

Attached as Exhibits A and B are NDALAMBA's Declaration and Exhibits attached thereto, and **NDALAMBA states as follows**:

1) Defendant TRICE was a former programmer for Plaintiffs.  TRICE had access to Plaintiffs' materials because he was independently working for Plaintiffs on an as needed basis.  These materials were used in creating the Crown Academy game. GNASS was given access to Plaintiffs' materials while working for Plaintiffs and was given the materials by Defendant STERLING. ( Doc. No. 24, Ex. A,B,G,H,I,J,K).

2) On December 14, 2019, NDALAMBA was contacted by GNASS and told that TRICE broke his NDA, had stolen Plaintiffs' materials. (Ex. A, Decl. Ndalamba, ¶¶4-7 Ex. A-E).

3) GNASS began to look for work elsewhere and desired to leave Defendants because, amongst other things, he was not getting paid. STERLING lashed out at GNASS when he

wanted to leave because they knew he had knowledge of their unlawful acts of theft. (Ex. A, Decl. Ndalamba, ¶¶4-11 Ex. G, H).

4) Plaintiffs became aware of a recorded phone conversation between GNASS and STERLING where she admits to theft and using Plaintiffs' materials. (Ex. A, Decl. Ndalamba, ¶¶12-14 Ex. L).

5) STERLING sent a Royale High place file and a code snippet to GNASS. STERLING tried to cover her tracks by deleting the place file but did not delete the code snippet. (Ex. A, Decl. Ndalamba, ¶¶15-25 Ex. I, , K, L, FF, S )( Doc. No. 24, Ex. H,I,J,M).

6) Defendants had access to Plaintiffs' materials and used them with full knowledge of their doings. (Ex. A, Decl. Ndalamba, ¶¶15-25 Ex. I, , K, L, FF, S )( Doc. No. 24, Ex. H,I,J,M). TRICE was required to sign an NDA before he was given access to Plaintiffs' materials. TRICE without authorization accessed Plaintiffs' materials while working for Defendants. The place file TRICE sent to Defendants was not the same file he had access to during his time with Plaintiffs. He accessed the materials *after* he left. (Ex. A, Decl. Ndalamba, ¶¶27-28) ( Doc. No. 24, Ex. F, H).

7) NDALAMBA owns and operates STARLINE MEDIA. All code produced by him is owned by STARLINE MEDIA. NDALAMBA has operated under STARLINE MEDIA even before the company was officially formed. STARLINE was formed at the time the copyright registrations were filed, and was the owner of the materials. STARLINE has adopted all acts of NDALAMBA prior to its formation and was assigned the copyrighted materials. A nunc pro tunc assignment was created to effectuate any and all agreements and intentions. (Ex. A, Decl. Ndalamba, ¶¶29-31, Ex. E)

4

8) While screen sharing between TRICE, STERLING, and GNASS, STERLING admitted that she should not be sharing the screen. (Ex. A, Decl. Ndalamba, ¶¶15-16 Ex. I, L, FF ) ( Doc. No. 24, Ex. H,I,J,M).

9) Defendants contend that the work performed, at the very beginning, was performed through UPWORK, a file sharing platform. However, only 80 hours of work was performed, and there is no claim to those materials. More than 4800 hours of additional work has been performed for Royale High and that is where the protected materials were produced. (Ex. A, Decl. Ndalamba, ¶¶32-40  Ex., V,W).

10) Plaintiffs are making no claims to materials that are either created through open source platforms, like NodeJS. (Ex. A, Decl. Ndalamba, ¶¶39-40).

11) TRICE falsely claims that he needed to store web server code in a private github so he could do work.  TRICE did so because he was wrongly appropriating Plaintiffs materials into Crown Academy.  (Ex. A, Decl. Ndalamba, ¶¶ 41-47, Ex. O,P,Q,)  These exhibits actually show that TRICE had copied RH API Loaded I to the CrownServer file, and it contains actual Royale High code. (Ex. A, Decl. Ndalamba, ¶¶43, Ex. P) ( Doc. No. 24, Ex. B).

12)  Max Gartung, Defendants' programme,r has filed a Declaration in this case, stating that Crown Academy does not contain any Royale High code, but admits to have known about misappropriation.  (Ex. A, Decl. Ndalamba, ¶¶48, Ex. R).

13) TRICE was caught swapping out Royale High's code into Crown Academy.  (Ex. A, Decl. Ndalamba, ¶¶49 Ex. I,L,M,P,Q, S).

14) Defendants claim that their average profit generated by Crown Academy user is $37.74 per user.  This is impossible because the game performs at a fraction of what Royale

High does, and Roblox keeps about 73% of the revenue.  Defendants' damages claims are simply false.  (Ex. A, Decl. Ndalamba, ¶¶50-56, Ex. X,Y,Z).

15) Defendants game was a failure because it is an attempt to knock-off one of the most popular games on the Roblox platform, and Players would rather play the original instead of a copy. (Ex. A, Decl. Ndalamba, ¶¶59-61, Ex. AA, BB, CC).  Royale High gets more than 16,389,000 monthly active Players, while Crown Academy has about 307 playing at any moment.   (Ex. A, Decl. Ndalamba, ¶¶59-61, Ex. AA, BB, CC).

16) Any statements deemed to be defamatory by Defendants were published by someone other than Plaintiffs.  (Ex. A, Decl. Ndalamba, ¶¶62, Ex. T, U).  Ted Davis published the videos complained of and Plaintiffs asked that they be taken down. (Ex. A, Decl. Ndalamba, ¶¶62, Ex. T, U).

**Attached as Exhibit C and D are the Declaration of Third Party Defendant, TYLER GNASS who states as follows:**

17) Gnass was hired  by Defendants in October 2018. (Ex. C, Decl. Gnass, ¶¶2,  Ex. A  to Decl.).

18) He assisted in the hiring of Defendant TRICE in summer 2019. (Ex. C, Decl. Gnass, ¶¶3 Ex. R,S to  Decl.).

19) In October 2019, he received a call from Defendant STERLING where she told him that she had obtained a copy of the Royale High code, STERLING sent him a screen shot of Plaintiffs' code and told GNASS not to tell TRICE. (Ex. C, Decl. Gnass, ¶¶5 Ex. Q to Decl.)(Doc. No. 24, Ex. H).

20) GNASS then wrote a script to display the faces of the characters by using the stolen materials. STERLING told GNASS that she wanted to copy the Royale High character faces. (Ex. C, Decl. Gnass, ¶¶5-6 Ex. Q to Decl.).

21) STERLING was prepared to fire TRICE for poor job performance and she did not want TRICE to know that she was giving these assets to GNASS. (Ex. C, Decl. Gnass, ¶¶7 Ex. X to Decl.)( Doc. No. 24, Ex. H).

22) GNASS discovered that TRICE was using drugs and he became unreliable and erratic in his behavior. He then discovered that he had stolen assets from GNASS' independent studio and brought them into Crown Academy. (Ex. C, Decl. Gnass, ¶¶78-10 Ex. C, D,E to Decl.)

23) GNASS then felt compelled to tell NDALMABA that TRICE and STERLING had stolen his materials and were using it in Crown Academy. (Ex. C, Decl. Gnass, ¶¶10-14 Ex. X to Decl.)( Doc. No. 24, Ex. H).

24) GNASS recorded a call he had in December 2019 with STERLING and STERLING admitted that "yeah, did we look through their stuff, yes!, Did I tell you, I even told Eli, I said show me their stuff, I voluntarily asked, he had it. GNASS told her that they should re-design but she wanted to release the game with the stolen materials. (Ex. C, Decl. Gnass, ¶¶,15-17 Ex. and X to Decl.).

25) GNASS had further discussions with STERLING regarding future employment and the continued employment of TRICE, and had additional game related discussions. (Ex. C, Decl. Gnass, ¶¶17-21, Ex. G, H, , K to Decl.).

26) GNASS never made any public statements about Defendants, but Ted Davis recorded a conversation and it was not GNASS who posted any statements complained of. (Ex. C, Decl. Gnass, ¶¶23)( Doc. No. 24, Ex. H)(Doc. No. 59, Ex. N).

27) GNASS has personal knowledge that STERLING and TRICE knew that TRICE had an NDA with Plaintiffs, and TRICE stated to him and to STERLING that he had the NDA. GNASS has a documented communication regarding the NDA. (Ex. C, Decl. Gnass, ¶¶24-25, Ex. M, N, O to Decl.).

**28)** STERLING actually gave GNASS the *entire* Royale High game code through a program called Discord.  STERLING told GNASS to use it to create the character faces, and not to tell TRICE. ( Doc. No. 24, Ex. H and I).

**Attached as Exhibit G is the Declaration of Launcelot Devault, CEO of Secret Waterfall, LLC, the owner of the Royale High game as he states:**

29) Plaintiffs only spent 80 on the free Upwork website, and that Plaintiffs are the owner of the copyright in the code that they produced. ((Ex. G, Decl. Devault, ¶¶ 4-14).

### III. THE LAW REQUIRES DENIAL OF SUMMARY JUDGMENT.

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144,

157 (1970). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

**A. Plaintiffs Own the Copyright Registrations.**

In making the argument that Plaintiffs' copyright registration are invalid, Defendants claim that Plaintiffs do not own the Registrations.  A US Copyright Registration is prima facie evidence of ownership.  Nothing stated by Defendants rebuts that presumption.  Plaintiff

9

STARLINE is the owner of the copyright registrations and the registrations clearly denote that. (Amended Complaint, Doc. No. 24, Exhibit O).  Defendants contend that Plaintiffs admit that they do not own the code, that Secret Waterfall, LLC owns the code.  Plaintiffs do not dispute that Secret Waterfall owns the Royale High game, and it also owns whatever code it may contain.  Except, that Secret Waterfall does not own the code that was original and created by Plaintiffs.  The Royale High game contains a substantial amount of code, and Plaintiffs make no claims to any of it, expect for the portion they wrote and that is subject to the Copyright Registrations.  There is no fact or evidence to support any other finding.  Plaintiffs' are not the owners of the Royale High game, nor the entirety of the remaining code they did not author.  Plaintiffs do own the code they wrote.  And that what Plaintiffs' claim was stolen and infringed.

Defendants contend that Plaintiff STARLINE was not in existence at the time the Work was created.  DAVID NDALAMBA was operating under STARLINE MEDIA well prior to forming STARLINE MEDIA, INC., and when the company was formed after creation of the copyrighted materials, they were assigned to STARLINE. **(Exhibit E).**    Even if Defendants allege that the Registrations are invalid, the Eleventh Circuit has stated that while "omissions and misrepresentations in a copyright application can render the registration invalid," it is necessary to show that there has been "intentional or purposeful concealment of relevant information." Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 828 (11 Cir. 1982).  In other words, to succeed in invalidating the registrations, Defendants must show that the element of "scienter" is met. Id. In contrast, immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration. Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1161 (11th Cir. 1994).  An error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application. Id.  Genuine

issues of material fact exist regarding whether the registration is valid, though they most certainly are.. A fact finder will need to determine if Mr. Ndalamba acted with scienter or if he made an inadvertent mistake when applying for the registration, or if there is any mistake at all.

Formation of a company after creation of the Work, where the parties have "cleaned" title through assignment is hardly scienter that would lead the Copyright Office to refuse registration. Anyone can claim ownership of the Registrations if neither party with standing opposes. In addressing a similar question of whether an irregularity in the copyright application constituted fraud, the court in Arthur Rutenberg Homes, Inc. v. Berger, 910 F. Supp. 603 (M.D. Fla. 1995), stated that "intent is not an issue that lends itself to resolution on a summary judgment motion." Id. at 607.  Specifically, a fact finder must determine whether NDALAMBA's assignment was a memorialization of an earlier oral assignment of the causes of action, and whether it is valid.  It is.  In an analogous context, the Eleventh Circuit examined 17 U.S.C. § 204(a), the provision of the copyright statute that sets out the requirements of a transfer of copyright ownership, and the effect of an oral assignment later confirmed in writing.  Imperial Residential Design, Inc. v. Palms Development Group, Inc., 70 F.3d 96 (11th Cir. 1995); Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc., 29 F.3d 1529, 1532 (11 Cir. 1994).  The Eleventh Circuit held that "a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio." Imperial Residential, 70 F.3d at 99. Defendants, nonetheless do not have standing to dispute the validity of ownership of the Registrations.  Both possible owners are Plaintiffs in this case.  Who owns the copyright Registrations is a dispute that only they can make toward each other.

The chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons

11

mistakenly or fraudulently claiming oral licenses or copyright ownership. Where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement. Id., at 99. Where both the original owner and the transferee have joined as plaintiffs in the same lawsuit — the Court will not let the alleged infringer invoke section 204(a). Id.. The court went on to say that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." Id.,70 F.3d at 99.

### B. Crown Academy Used Protected Code and Materials Stolen From Plaintiffs.

The record, starting with the Amended Complaint and the Exhibits, shows that Defendants' have used Plaintiffs protected materials. (Doc. No. 24, Exhibits A-O).  Also attached hereto as **Exhibit F** is a copy of certain files obtained from Roblox, the gaming platform that hosts both the Royale High and Crown Academy games .  The images produced by Roblox confirms that from the onset, Defendants used and incorporated Plaintiffs materials.  To assert any other position is simply misleading and false.   These documents and computer files, have at all times, been in possession of Defendants, but they were only obtained from Roblox pursuant to a subpoena that the Court enforced. (Order, Doc. No.55).   The infringing materials, in part, are attached hereto.  There are simply too many issues of fact to warrant summary judgment.

The Declarations filed by Defendants are either artfully drafted, or are from the wrong Declarants, because the code exists as claimed, and theft occurred.  The evidence is clear.

### C. There Are Facts In Dispute Regarding Tortious Interference.

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla. 1994). A business relationship need not be evidenced by a contract, but it generally requires "an understanding between the parties [that] would have been completed had the defendant not interfered." Id.

Plaintiff has made the factual allegations that meet the requirements and enough facts in support exist to defeat summary judgment.  Defendants hired Defendant TRICE, Plaintiffs' former programmer, to create the Crown Academy game.  Defendants were aware that TRICE had an NDA with Plaintiffs.  Defendants acknowledged the NDA, and used TRICE's access to Plaintiffs'' materials.  Those acts were, and are, unjustified.  Plaintiffs were damaged.  These facts support denial of summary judgment.  (Ex. A, Dec. Ndalamba, ¶3).

**C. Facts Exist to Support Trade Secret Misappropriation.**

The Amended Complaint contains, as Exhibit M (Amended Complaint, Doc. No. 24) the NDA, which states:

> **III. DEFINITION.** For the purposes of this Agreement, the term "Confidential Information" shall include, but not be limited to, software products, software source code or any related codes in all formats, business plans, financial statements, customers or users, analytical data, documentation, and correspondences that have not otherwise been made publicly available.
>
> However, Confidential Information does not include:
>
>     (a) information generally available to the public;
>
>     (b) widely used programming practices or algorithms;
>
>     (c) information rightfully in the possession of the Parties prior to signing this Agreement; and
>
>     (d) information independently developed without the use of any of the provided Confidential Information.

Thus, Defendants have acknowledged that Plaintiffs have considered the materials, the access provided, the know-how offered, and the ease in which Defendants were able to develop the Crown Academy game expeditiously because they did not have to create an original work, at substantial time and expense. The NDA (Exhibit M, Amended Complaint), proves an agreement that the materials and access were treated as confidential and trade secret. Defendants used TRICE's disclosure of the materials to their benefit, and as such, have used trade secret materials without authority. The elements of a trade secret claim are met. That TRICE was permitted, or that others are permitted, to access information on an as needed basis does not preclude trade secret protection.

      Plaintiffs reasonably protected the information by requiring, and entering into, the NDA with TRICE. There is simply no means to award summary judgment on these facts when the existence of the NDA, and the promise of TRICE to maintain confidentiality, should preclude summary judgment.

### E.    SUMMARY JUDGMENT ON DEFENDANTS' DEFAMATION CLAIMS IS NOT WARRANTED.

Truth is a defense to any claim of defamation, where the statements are not false, or without reckless disregard for the truth. In this case, there has been no determination that any statements made by Plaintiffs or by Third Party Defendant GNASS are false. The trier of fact must make that determination first. Here, if the allegations are true, then the statements, to the extent that were even made by Plaintiffs or GNASS. There are even factual issues related to whether these statements were made as alleged, and who posted them publicly.

### F.    SUMMARY JUDGMENT ON DEFENDANTS TRADE LIBEL CLAIMS IS NOT WARRANTED.

For the same reasons, summary judgment is not warranted on Defendants trade libel claims. There is no finding that any claims or statements made by any party are false, or knowingly made. There is ample evidence of record to support that any statements are true.

### G.    CONCLUSION.

Plaintiffs have a well developed set of facts supported by evidence. The record is full of facts, screen shots, evidence of copying, an NDA agreement, a former programmer who worked for Defendants who came forward , recorded conversations admitting liability, Declarations supported by Exhibits, and an Amended Complaint with 15 Exhibits that make a prima facie case of infringement, trade secret theft, and breach of the NDA.

Other than Plaintiffs' failure to respond to admissions due to the death of a child (subject to a pending Motion), there is simply no evidence to support a lack of factual issues on almost every issue. If a Motion for Summary Judgment were to be filed, Plaintiffs' had the better

argument for it.  However, in cases such as this, Summary Judgment is rarely useful, and instead, it causes an enormous strain on the judicial resources we are afforded.

    Summary Judgment is simply not appropriate on these facts and it should be denied.

                                        Respectfully submitted,

Date:   September 3, 2021          /s/Louis R. Gigliotti
                                            Louis Gigliotti
                                            Louis R. Gigliotti, PA
                                            Florida Bar No.: 71935
                                            1605 Dewey Street
                                            Hollywood, FL 33020
                                            P: 954-471-4392
                                            lgigliotti@bellsouth.net


## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that the foregoing has been filed via ECF, this 3rd  day of September, 2021.

                                            By: s/Louis R. Gigliotti,Esq./
                                                   Louis R. Gigliotti, Esq.