# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| DAVID NDALAMBA, and STARLINE MEDIA, INC.<br>　　　Plaintiffs,<br><br>v.<br><br>ELISHA TRICE, JOMY STERLING, and STAR STATUS GROUP<br><br>　　　Defendants. | C.A. No. 6:20-CV-01210-GAP-GJK |
| JOMY STERLING and STAR STATUS GROUP<br>　　　Counterclaim Plaintiffs,<br><br>v.<br><br>DAVID NDALAMBA and TYLER GNASS<br><br>　　　Counterclaim Defendants. | |

### JOMY STERLING D/B/A STAR STATUS GROUP'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Jomy Sterling d/b/a Star Status Group (collectively, "**Ms. Sterling**"), by and through her undersigned counsel, hereby submit this reply brief in support of her motion for summary judgment:

**A. Ms. Sterling Is Still Entitled To Summary Judgment On Plaintiffs' Copyright Claim Despite Efforts To Create Genuine Disputes Of Material Fact.**

Page 1 of 11

**1.     The Royale High game code Plaintiffs allege Elisha Trice stole and Ms. Sterling improperly used in Crown Academy is not subject to U.S. Copyright Registration No. TX 8-868-254 (Doc. 24-15, p. 3) and therefore cannot provide a basis for a copyright infringement claim against Ms. Sterling.**

The code depicted in the screenshot at [Doc. 66-3, p.9 "Ex. M"] appears to come from an October 3, 2019 version of Royale High. Mr. Ndalamba further states, "[c]opies of Royale High were downloaded to use in production of Crown Academy, specifically **newer versions** of the game published long after Elisha Trice was contracted." [Doc. 66-1, p. 8] (emphasis added). Mr. Trice finished working with Mr. Ndalamba in August of 2019. [Doc. 62-8, ¶ 17]. Thus, the version of the Royale High code Plaintiffs allege was stolen is not the same code that was registered with the U.S. Copyright Office. The copyright registration for the "Royale High code" at [Doc. 24-15, p. 3] says the registered code was completed in "2018." Mr. Ndalamba clearly testifies that the code in the October 3, 2019 version of Royale High did not exist as of December 31, 2018. As such, Plaintiffs' copyright claim must be dismissed to the extent it relies on unregistered 2019 code that did not exist at the end of 2018. *See Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019); *see also Airframe Sys. v. L-3 Communs. Corp.*, 658 F.3d 100, 107-108 (1st Cir. 2011) and *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.* 354 F.3d 112, 116 (2nd Cir. 2003) ("Because Well-Made did not register its copyright in the 48-inch Sweetie Mine, section 411(a) barred the district court from considering whether that copyright had been infringed by Goffa.").

**2.     Plaintiffs' admissions with respect to who owns (or does not own) copyright in the Royale High source code together with other summary judgment evidence shifts the burden of establishing ownership back to Plaintiffs, a burden they cannot meet.**

While a copyright registration does initially provide its holder with a presumption of ownership that shifts the issue of ownership to defendant, the presumption can be rebutted. *Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 Fed. App'x. 913, 919 (11th Cir. 2013). If a defendant rebuts the presumption, the burden of establishing ownership of the copyrights at issue shifts back to the plaintiff. "To rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's *prima facie* case of infringement. *Id.* (internal citations omitted) (affirming summary judgment in defendants' favor because defendants rebutted the presumption, shifting the burden back to plaintiff, which plaintiff could not meet). Here, there is adequate evidence in the summary judgment record rebutting Plaintiffs' initial presumption of ownership: (1) Plaintiffs' admit Royale High is owned by another company and that they do not own all of the Royale High code [Doc. 64-2, ¶ 4; Doc. 64-3, ¶ 4; Doc. 66, p. 10]; (2) the code depicted at [Doc. 24-11] and [Doc. 66-3, pp. 8-9] consists of a series of standard Roblox protocols that fetch publicly available Roblox game assets created by other third parties [Doc. 67-3, ¶¶ 3-7]; and (3) Plaintiffs' admit the code depicted at [Doc. 24-2] and [Doc. 66-3, p. 11; Doc. 66-5, p. 4] is based on open source code, which they do not own. [Doc. 66-1, ¶¶ 39, 47]. Without the benefit of the presumption, Plaintiffs fail to meet their burden with respect to ownership. There is no probative evidence

in the summary judgment record that shows they own copyrights in (a) the Roblox asset ID protocols found in the Face ID Code (defined below); (b) the open source-based NodeJS Code (defined below);[1] or (c) any other Royale High code for that matter in a game solely owned by another company called Secret Waterfall LLC.

> **3. No reasonable jury could find for Plaintiffs with respect "substantial similarity" because there is absolutely no probative evidence in the summary judgment record that shows Crown Academy source code contains or otherwise uses original elements from the Royale High game.**

Even assuming the Royale High source code Plaintiffs allege was infringed was actually registered and is in fact owned by Plaintiffs, summary judgment on the copyright claim in Ms. Sterling's favor is still appropriate because – based on the undisputed evidence in the summary judgment record – no reasonable jury could find "substantial similarity" between the applicable works here. In order to determine if two works are in fact "substantially similar" for purposes of copyright infringement the plaintiff (as the party with the burden of proof) must provide the applicable works (or sufficient portions thereof) for side-by-side comparison. [*See* Doc. 59, pp. 18-19 (and cases cited)].

Here, Plaintiffs attempt to do this in opposition to Ms. Sterling's motion for

---

[1] Use of NodeJS code is subject to the MIT License. [Doc. 66-1, ¶ 47]. Creating new code based on NodeJS is permitted under the MIT License so long as the new code contains specific copyright and permission notices that are provided in the MIT License. *See* **Exhibit 1**. If these notices are not included, any new code based on the open source NodeJS code violates the MIT License and, as result, any potential ownership interest in the new code is rendered void. *See* 1 Nimmer on Copyright § 3.06 (2021). Here, Plaintiffs provide no evidence that the NodeJS code depicted in [Doc. 24-2] and [Doc. 66-3, p. 11; Doc. 66-5, p. 4] contains the required MIT License notices. Therefore, Plaintiffs cannot meet their ownership burden with respect to the NodeJS code at issue in this case.

summary judgment by citing to and/or providing the following materials:

**The Alleged Royale High Code**: Plaintiffs provide the following screenshots they allege show Royale High code: (1) excerpts of the so-called "NodeJS" or Royale High web server code at [Doc. 24-2] and [Doc. 66-3, p. 11; Doc. 66-5, p. 4] (the "**NodeJS Code**");[2] (2) a snippet of code containing a series of standard Roblox asset ID protocols being used to fetch publicly available game assets created by other Roblox developers at [Doc. 24-11] and [Doc. 66-3, pp. 8-9] (the "**Face ID Code**"); and (3) 16 lines of code that Plaintiffs purport to be Royale High code at [Doc. 66-3, p. 24] (the "**UpperTorso Code**").[3] Plaintiffs also point to a screenshot attached to their Amended Complaint at [Doc. 24-1] that purportedly shows a comparison between Royale High's in-game shop user interface and Crown Academy's in-game shop user interface (the "**Shop UI Screenshot**").[4] No other evidence of the Royale High

---

[2] Mr. Ndalamba and Starline admit they never possessed actual Crown Academy source code, which necessarily proves that the NodeJS Code shown in these screenshots is not actual Crown Academy source code (since one cannot take a screenshot of something he or she does not possess). [Doc. 64-4, ¶¶ 36, 37; Doc. 64-5, ¶¶ 36, 37].

[3] As argued in Ms. Sterling's motion to strike at [Doc. 68] this screenshot was never produced during discovery despite being responsive to timely served requests for production of documents, and as such, should be excluded from the summary judgment record pursuant to Rule 37(c)(1). Thus, it cannot be used by Plaintiffs to show Royale High code and Crown Academy code are "substantially similar."

[4] This screenshot must be excluded for several reasons: (1) it purports to show the content of a file called "ui.rbxl," a file that this Court ordered Plaintiffs to produce by September 7, 2021, but they did not; (2) it is not the best evidence of the "ui.rbxl" file in violation of Fed. R. Evid. 1002; (3) Mr. Gnass admits he never used the "ui.rbxl" file in Crown Academy during the time he authored all the source code for the game [Doc. 64-6, ¶¶ 5, 23; Doc. 64-7, ¶¶ 5, 23]; and (4) Mr. Ndalamba admits he took the screenshot of the "ui.rbxl" file while also admitting he and Starline do not possess actual Crown Academy source code (one cannot take a screenshot of something he or she does not possess) [Doc. 64-2, ¶¶ 28, 38; Doc. 64-2, ¶¶ 28, 38]. Thus, Plaintiffs cannot rely on this screenshot in showing "substantial similari-

code (in the form of screenshots or files) was submitted into the summary judgment record.

**The Alleged Crown Academy Code**: Plaintiffs provide a 29-page PDF identified as Exhibit F at [Doc. 66-7, "Starline 15017-45"] consisting of screenshots of two ".rbxl" files their counsel received from Roblox: "2506647097-7496.rbxl" and "3881730769-5.rbxl." Plaintiffs allege these screenshots depict Crown Academy code. However, that is not accurate. The parties received a zip file from Roblox called "tsga176.zip, " which contained a folder called "tsga176." *See* **Exhibit 3**, ¶¶ 3-4. The "tsga176" folder contained four sub-folders. One of the sub-folders was called "Crown Academy" and another was called "UndesiredChaos." The "2506647097-7496.rbxl" file identified in the 29-page PDF is from the sub-folder called "Crown Academy" while the "3881730769-5.rbxl" file is from the sub-folder called "UndesiredChaos." *Id.* at ¶ 5. "UndesiredChaos" identifies a Roblox user account owned by Elisha Trice. *See* **Exhibit 4**, ¶ 3. Ms. Sterling has never had any access to the "UndesiredChaos" account and in fact never knew about it until this litigation. *See* **Ex. 4**, ¶¶ 4-5; **Exhibit 5**, ¶ 5. No files associated with the "UndesiredChaos" account were ever used in the Crown Academy source code. *See* **Ex. 4**, ¶ 6. So, the only source code associated with Crown Academy in the record (based on a reasonable interpretation of the "tsga176" file received from Roblox) is the code from

---

ties" between the Royale High code and Crown Academy Code. *See* Fed. R. Civ. P. 37(c)(1) and Fed. R. Evid. 1002.

the "2506647097-7496.rbxl" file depicted on pages 1-4 and 16-29 of the 29-page PDF (the "**Crown Academy Source Code**").[5]

**The NodeJS Code is not in the Crown Academy Source Code**: A review of the Crown Academy Source Code entered into the summary judgment record clearly shows it does not contain the NodeJS Code.[6]

**The Face ID Code is not in the Crown Academy Source Code**: A review of the Crown Academy Source Code entered into the summary judgment record clearly shows it does not contain the Face ID Code.

**The UpperTorso Code is not in the Crown Academy Source Code**: A review of the Crown Academy Source Code entered into the summary judgment record clearly shows it does not contain the UpperTorso Code.

**The Shop UI Screenshot**: Assuming this screenshot is considered admissible evidence (it should not be), it still does not turn the issue of "substantial similarity" into a jury question. When it comes to user interfaces (or nonliteral elements of a computer program), district courts in the 11th Circuit must use the "virtual identicality" standard when determining copyright infringement liability. *See MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1555-58 (11th Cir. 1996) (Nonliteral elements of a computer program "are products that are generated by the code's interaction with the computer hardware and operating system(s)", of which "screen displays

---

[5] Plaintiffs' counsel claims it received the Crown Academy Source Code only because Roblox provided it. This is false. Ms. Sterling provided Plaintiffs' counsel with three Crown Academy place files containing Crown Academy source code during discovery.
[6] Mr. Gnass admits the NodeJS Code was never used in Crown Academy. *See* **Exhibit 2**.

and the main menu" are illustrative examples.) Here, the UIs depicted in the Shop UI Screenshot are nonliteral elements and therefore subject to the higher "virtual identicality" standard. A review of the screenshot shows the respective shop UIs are not virtually identical. Specifically, the so-called Crown Academy shop UI has many categories not found in the Royale High shop UI, such as "hairs," "makeup," "clothing," "designer," "houses," and "shoes." The Royale High shop UI has phrases that do not appear in the Crown Academy shop UI, such as "What type of fairy are you?," "A true Royale High staple," and "Or go barefoot. That's fine too." The list goes on: the backgrounds are different, the Royale High shop contains a "monthly newsletter," one has a "premium" option while the other does not, the Crown Academy shop only has three columns whereas the Royale High shop has five, etc. This clearly does not satisfy the higher "virtual identicality" standard.

Accordingly, the works at issue in this case cannot be "substantially similar" as a matter of law. As such, summary judgment on this claim should enter in Ms. Sterling's favor.[7]

**B.  Ms. Sterling Is Still Entitled To Summary Judgment On Plaintiffs' Tortious Interference Claim Despite Efforts To Create Genuine Disputes Of Material Fact.**

Plaintiffs' entire argument to avoid summary judgment on their tortious interference claim is supported by a single cite to one paragraph in Mr. Ndalamba's dec-

---

[7] Even if there was evidence in the record that the NodeJS Code, Face ID Code, and/or UpperTorso Code was in the Crown Academy Source Code, Plaintiffs provide no evidence concerning either the quantitative or qualitative significance of the amount copied. *See MiTek*, 89 F.3d at 1560 ("The burden is on the copyright owner to demonstrate the significance of the copied features."). Any such copying would be *de minimus*.

laration. [*See* Doc. 66, p. 13]. His testimony does nothing to controvert Ms. Sterling and Mr. Trice's declaration testimony with respect to elements (2) and (3) of the claim. Further, Plaintiffs provide no evidence showing the information Ms. Sterling allegedly acquired or came in contact with is "Confidential Information" as defined under the NDA. In fact the evidence suggests otherwise: The Face ID Code is just a series of standard Roblox protocols/asset ID info and the open source-based NodeJS Code was provided to Mr. Trice by Mr. Ndalamba prior to the signing of the NDA on June 19, 2019. Last, and perhaps most fatally, Plaintiffs provide absolutely no evidence that they incurred any actual damages as a result of the breached NDA, a necessary element of the claim. As such, summary judgment should enter on this claim in Ms. Sterling's favor.

**C. Ms. Sterling Is Still Entitled To Summary Judgment On Plaintiffs' Trade Secret Misappropriation Claim Despite Efforts To Create Genuine Disputes Of Material Fact.**

Plaintiffs have the burden of showing their information in fact qualifies as a trade secret. *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998). They fail to meet this burden. There is absolutely no evidence in the record that establishes the code in the summary judgment record is "Confidential Information" as defined under the NDA or otherwise derives independent economic value from not being generally known or readily ascertainable. Further, Mr. Ndalamba and Starline admit that they do not take reasonable steps to keep the information secret such as having everyone who has access to Royale High materials ex-

ecute a NDA. [Doc. 64-2, ¶¶ 35, 36; Doc. 64-3, ¶¶ 35, 36]. Last, as argued more fully above, there is no evidence in the summary judgment record that shows Royale High code was used in the Crown Academy code. Accordingly, Plaintiffs fail to meet their burden on any of the elements of the claim. Summary judgment in Ms. Sterling's favor on this claim is therefore appropriate.

### D. Ms. Sterling Is Still Entitled To Summary Judgment On Her Defamation and Trade Libel Claims Despite Efforts To Create Genuine Disputes Of Material Fact.

First, Plaintiffs and Mr. Gnass misunderstand a fundamental concept of defamation under Florida law: a defendant need only convey a defamatory statement to one person to effectuate "publication." *Geller v. Von Hagens*, No. 8:10-cv-01688-EAK-AEP, 2011 U.S. LEXIS 69847, at * 5 (M.D. Fla. June 29, 2011), *quoting Fiore v. Rogero*, 144 So. 2d 99, 102 (Fla. Dist. Ct. App. 1962). Therefore, Mr. Ndalamba and Mr. Gnass published the defamatory statements at issue in this case when they conveyed those statements to Ted Davis, the other individual on the call with Mr. Ndalamba and Mr. Gnass. [Doc. 66-1, ¶ 64]. In any event, Plaintiffs and Mr. Gnass do not appear to take issue with Ms. Sterling's evidence in support of her claims except to argue that what they said on the call was true. [Doc. 66, p. 15]. If truth is the only defense to these claims, then Ms. Sterling should prevail as a matter of law on her defamation and trade libel claims should summary judgment enter in her favor on Plaintiffs' copyright, tortious interference, and trade secret misappropriation claims.

## CONCLUSION

WHEREFORE, the Court should grant Ms. Sterling's motion for summary judgment in its entirety, entering judgment that incorporates the relief requested in Ms. Sterling's counterclaims [Doc. 20, pp. 8-9].

DATED: September 17, 2021                Respectfully submitted

Jomy Sterling AND
Star Status Group
By Their Attorney,
/s/ Shaun P. Keough
Shaun P. Keough (Trial Counsel)
Florida Bar  # 1000985
PARKER KEOUGH LLP
3505 Lake Lynda Dr. Suite 200
Orlando, FL 32817
Tel.: (321) 262-1146
Fax.: (617) 963-8315
E-mail: skeough@parkerkeough.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Court using the Court's ECF System which will electronically serve a copy on September 17, 2021 on all counsel of record.

BY: /s/ Shaun P. Keough
Shaun P. Keough (Trial Counsel)
Florida Bar  # 1000985