## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| DAVID NDALAMBA and STARLINE MEDIA, INC., | |
| Plaintiffs, | |
| v. | |
| ELISHA TRICE, JOMY STERLING, and STAR STATUS GROUP, | C.A. No. 6:20-cv-1210-GAP-GJK |
| Defendants. | |
| JOMY STERLING and STAR STATUS GROUP, | |
| Counterclaimants, | |
| v. | |
| DAVID NDALAMBA and TYLER GNASS, | |
| Counterclaim Defendants. | |

## JOINT FINAL PRETRIAL STATEMENT

Plaintiffs STARLINE MEDIA, INC. ("Starline") and DAVID NDALAMBA ("Ndalamba") (collectively, "Plaintiffs"), Counterclaim Defendant TYLER GNASS ("Gnass"), and Defendants JOMY STERLING and STAR STATUS GROUP (collectively, "Sterling"), by and through the undersigned counsel and pursuant to the Court's Case Management and Scheduling Order (Doc. 22) and Local Rule 3.06, file this Joint Final Pretrial Statement, and state as follows:

1

1. **BASIS FOR THE COURT'S JURISDICTION**

    **a.** Amended Complaint (Doc. 24) – Count I: Copyright Infringement; 28 U.S.C. § 1331 (federal question)

    **b.** Amended Complaint (Doc. 24) – Count IV: Violation of Florida's Uniform Trade Secrets Act ("FUTSA"); 28 U.S.C. §§ 1332 (diversity), 1367(a) (supplemental)

    **c.** Amended Counterclaim (Doc. 20) – Count I: Defamation; 28 U.S.C. §§ 1332 (diversity), 1367(a) (supplemental)

    **d.** Amended Counterclaim (Doc. 20) – Count II: Trade Libel; 28 U.S.C. §§ 1332 (diversity), 1367(a) (supplemental)

2. **CONCISE STATEMENT OF THE ACTION**

    Plaintiffs brought this action against Sterling for alleged copyright infringement and violation of FUTSA arising from Sterling's alleged unauthorized acquisition, disclosure, or use of Plaintiffs' intellectual property and trade secrets; specifically, Plaintiffs' copyrighted software used in the development of a video game titled "Royale High" that is available on a platform called "Roblox."[1]

    Sterling brought her counterclaims against Ndalamba and Gnass for alleged defamation trade libel arising from statements that Ndalamba and Gnass allegedly made related to Sterling's alleged copyright infringement and violations of FUTSA.

---

[1] Plaintiffs also brought causes of action against Defendant ELISHA TRICE ("Trice") related to these issues. However, Trice is in default and, as such, Plaintiffs' allegations and causes of action against Trice are not at issue in this trial except to the extent necessary to prove Plaintiffs' allegations and causes of action against Sterling. *See* Doc. 42.

**3.**     **CONCISE STATEMENT OF EACH PARTY'S POSITION**

**a. <u>Plaintiffs' and Gnass' Position</u>**

In 2018, Plaintiffs were hired as programmers for a video game titled "Royale High," which is available to the public through an online video platform called Roblox. Throughout the course of their work on Royale High, Plaintiffs developed many of Royale High's core systems and back-end infrastructure, creating intellectual property in process. Plaintiffs are the sole owners of the code they have written and have since registered three copyrights for same.

In April 2019, Trice contacted Plaintiffs to see if they needed the assistance of a data analyst for the development of Royale High. Plaintiffs hired Trice to work on Royale High's external systems, including Royale High's web server code. Trice was given access to Plaintiffs' production and staging database, as well as GitHub, a code repository tool where developers can maintain their software, and Plaintiffs' production servers.

On June 19, 2019, Trice executed a Non-Disclosure Agreement with Plaintiffs. Plaintiffs subsequently gave Trice access to Plaintiffs' account and Royale High's place file.[2] Trice used this access to download copies of the Royale High place file. Trice's work for Plaintiffs concluded in August 2019 and he has not worked for Plaintiffs or had authorized access to Plaintiffs' accounts or systems since that time.

---

[2] A place file is a document containing source code for a Roblox game.

In or about August 2019, Gnass, who was friends with Trice and had been working for Sterling since October 2018, asked Sterling if she would hire Trice to assist with developing Crown Academy, a game Sterling was developing on Roblox to compete with Royale High. Sterling hired Trice to work on Crown Academy's web server.

On or about October 3, 2019, shortly after hiring Trice, Sterling called Gnass to tell him that she had obtained a copy of the Royale High place file. Sterling subsequently sent a copy of a Royale High place file to Gnass and directed him to copy Royale High's faces. Gnass used the Royale High place file to obtain Royale High's asset ID's and provided Royale High's faces to Sterling for her use in Crown Academy. To cover up her wrongdoing, Sterling has since deleted the message in which she sent Gnass a copy of the Royale High place file.

In December 2019, Gnass analyzed code that Trice had written for Crown Academy's new shop after observing similarities between Crown Academy's new shop design and Royale High's new shop design, which was created long after Trice had stopped working for Royale High. Gnass discovered that the code had been taken from Royale High and still included references to Royale High. Gnass then looked at the work that Trice had done on Crown Academy's web server and discovered that Trice had taken the entire framework from Royale High's web server and used it for Crown Academy.

In addition, on December 15, 2019, Trice screen shared with Sterling a stolen version of Royale High's code that had been created long after Trice's contract with Plaintiffs had ended. Sterling confirmed in a chat with Gnass that this was Royale High's code. Nevertheless, Sterling shared portions of this code with third parties.

Also in December 2019, Gnass spoke to Sterling about the stolen assets he had discovered in the Crown Academy code. Sterling admitted that she had voluntarily requested the Royale High assets and had looked through them. Gnass told Sterling that they should re-design Crown Academy, but Sterling refused and wanted to release Crown Academy with Royale High's assets intact.

On December 23, 2019, Gnass told Sterling that he had been given another job opportunity and that he intended to take it. Sterling then revoked Gnass' access to Crown Academy.

In sum, Sterling illicitly acquired and disclosed Plaintiffs' trade secrets and intellectual property, and used same for the development of Crown Academy, a direct competitor to Royale High.

Regarding Sterling's counterclaims, Sterling alleges that Ndalamba and Gnass published a recorded telephone conversation between Ndalamba, Gnass, and Ted Davis ("Davis"). However, Davis recorded and published this conversation without Ndalamba's or Gnass' knowledge or consent. Ndalamba has asked Davis to take down the conversation, but Davis refused. Regardless,

any statements made by Ndalamba and Gnass on this recording were statements of fact related to this case, statements of opinion regarding Sterling, or otherwise privileged or appropriate.

Similarly, the statements that Ndalamba made regarding Sterling and shared through Twitter were statements of fact related to this case, statements of opinion regarding Sterling, or otherwise privileged or appropriate.

Gnass has never published or made any public statements about Sterling.

### b. **Sterling's Position**

With respect to Plaintiffs' claims, Ms. Sterling believes Plaintiffs have no competent evidence showing that the Crown Academy code contains a sufficient amount of original code authored by Plaintiffs to sustain a copyright claim. Plaintiffs also have no competent evidence that the information Ms. Sterling was exposed to qualify for trade secret protection, therefore a trade secret misappropriation claim does not lie. Because Plaintiffs have no competent evidence showing Ms. Sterling used protectable Royale High materials in Crown Academy, Mr. Ndalamaba and Mr. Gnass defamed Ms. Sterling and engaged in trade libel when they told a third party that Ms. Sterling stole Royale High materials or had someone do it for her.

6

4. **LIST OF EXHIBITS**

   a. Plaintiffs' and Gnass' exhibit lists "A" and "B" are attached hereto as Exhibits 1 and 2, respectively.

   b. Sterling's exhibit lists "A" and "B" are attached hereto as Exhibits 3 and 4, respectively.

5. **LIST OF WITNESSES**

   a. Plaintiffs' and Gnass' witness list is attached hereto as Exhibit 5.

   b. Sterling's witness list is attached hereto as Exhibit 6.

6. **LIST OF EXPERT WITNESSES**

   None.

7. **BREAKDOWN OF TYPE AND AMOUNT OF MONETARY DAMAGES**

   a. **Plaintiffs' Compensatory Damages**

      i. Unjust Enrichment/Disgorgement of Profits – The amount of Sterling's unjust enrichment/profits will be determined by the amount of Crown Academy's profits that the jury determines were attributable to Plaintiffs' trade secret or copyrighted information.

      ii. Reasonable License Fee – The jury will determine the amount of a reasonable license fee for Sterling's use of Plaintiffs' copyrighted material.

  **iii.** Reasonable Royalty – The jury will determine the amount of a reasonable royalty for Sterling's misappropriation of Plaintiffs' trade secrets.

**b. Plaintiffs' Statutory Damages –** Plaintiffs may be awarded $150,000 per copyrighted work because Sterling willfully infringed Plaintiffs' copyrights.

  **i.** **Sterling's Objection** – Plaintiffs are not entitled to statutory damages because they did not register their copyrights prior to the infringement or within three months of publication.

**c. Plaintiffs' Exemplary Damages –** Plaintiffs may be awarded exemplary damages of up to two times the amount of Plaintiffs' compensatory damages arising from Sterling's misappropriation of Plaintiffs' trade secrets because Sterling's misappropriation was willful and malicious.

**d. Sterling's Damages** – Sterling may be awarded damages resulting from Ndalamba and Gnass's false and defamatory statements about her.

**8.** **LIST OF EACH DEPOSITION OFFERED IN LIEU OF LIVE TESTIMONY**

None.

**9.** **CONCISE STATEMENT OF EACH ADMITTED FACT**

**a.** Royale High is a video game publicly available to play on the platform called Roblox.

**b.** Crown Academy is a video game publicly available to play on the platform called Roblox.

**c.** Royale High and Crown Academy are competitors.

**d.** Plaintiff Ndalamba worked as a programmer on Royale High.

**e.** While working as programmers on Royale High, Plaintiff Ndalamba created source code and related assets for use in Royale High.

**f.** Plaintiff Ndalamba hired Trice to assist them in working on the Royale High video game.

**g.** Trice had access to the Royale High Web Server Source Code and stored this code in his private GitHub repository.

**h.** On June 19, 2019, Trice executed the Software Development Non-Disclosure Agreement (the "NDA") attached to the Amended Complaint and returned an executed copy to Ndalamba. *See* Doc. 24-13.

**i.** After Trice executed the NDA, Plaintiff Ndalamba gave Trice access to the Royale High Place File.

**j.** Trice has not worked for Plaintiffs since August 2019 and has not had authorized access to Plaintiffs systems since that time.

**k.** In or around October 2018, Sterling hired Gnass to work as a programmer on Crown Academy.

**l.** In August 2019, Sterling hired Trice to work on Crown Academy.

**m.** Sterling goes by the persona Pixelated Candy and has been well known in the Roblox community since 2014.

**n.** Ndalamba goes by the persona Ice7.

**o.** Gnass goes by the persona Tyler.

**p.** Trice goes by the persona Einstein (Eli)

**q.** Ted Davis, a third party, posted the YouTube video that is the subject of Sterling's counterclaims.

**r.** On July 21, 2020, Ndalamba shared a link via his Twitter account to the TwitLonger post depicted in Sterling's Exhibit 9.

**s.** Tarah Uhrich goes by "callmehbob" on Roblox.

**t.** "callmehbob" is also known as "night Barbie" and/or "barbie."

**u.** David Ndalamba gave Elisha Trice access to Royale High's web server (including applicable source code) prior to June 19, 2019.

**v.** David Ndalamba did not revoke Elisha Trice's access to Royale High source code and assets at any point prior to January 1, 2020.

**w.** Royale High's web server is based on node.js.

**x.** David Ndalamba does not own node.js.

**y.** David Ndalamba provided Secret Waterfall LLC with game development services with respect to Royale High through the online platform called "upwork."

**z.** Not everyone who has access to Royale High's source code is subject to a non-disclosure agreement.

**aa.** Not everyone who has access to a Royale High place file is subject to a non-disclosure agreement.

**bb.** David Ndalamba had the ability to edit the "ui.rbxl" file prior to the commencement of this action.

**cc.** Discord chats can be modified after they are created.

**dd.** Starline Media, Inc. provided Secret Waterfall LLC with game development services with respect to Royale High through the online platform called "upwork."

**ee.** Tyler Gnass had access to Crown Academy's source code from February 2019 to December 2019.

**ff.** Tyler Gnass was Crown Academy's lead scripter from February 2019 to December 2019.

**gg.** Tyler Gnass authored all the source code for Crown Academy during his time as lead scripter in 2019.

**hh.** Tyler Gnass had the ability to modify or otherwise edit the Royale High place file you had access to prior to September 2, 2021.

11

    **ii.**       Tyler Gnass had the ability to modify or otherwise edit the file called "ui.rbxl" prior to September 2, 2021.

    **jj.**       Tyler Gnass did not have Ms. Sterling's consent to record the call he had with her on or about December 15, 2019.

    **kk.**      Tyler Gnass told David Ndalamba prior to February 2020 that Ms. Sterling did not know about Elisha Trice's alleged use of Royale High source code, assets, and information.

    **ll.**       Tyler Gnass had the ability to edit the "ui.rbxl" file prior to the commencement of this action.

**10. CONCISE STATEMENT OF EACH AGREED PRINCIPLE OF LAW**

    **a.** The parties agree that they may admit hearsay as impeachment evidence or for purposes of rebutting testimony.

    **b.** The parties agree that they may use files provided by Roblox and containing information about Roblox's users and IP Addresses for purposes of impeachment or to rebut testimony, subject to the right to contest such information's relevance and/or to protect personally identifiable information.

    **c.** The parties agree that to establish copyright infringement, Plaintiffs must prove that they own a valid copyright, and that Sterling copied the work's original components.

**d.** The parties agree that a work is copyrighted at the moment of creation even if it is never registered with the United States Copyright Office.

**e.** The parties agree that a certificate of registration made within five years after the first publication of the claimed work is evidence of the copyright's validity and shifts the burden of proving validity, or the alleged lack thereof, to the defendant.

**f.** The parties agree that to invalidate a copyright registration based upon allegations of fraud on the Copyright Office, a defendant must prove that the plaintiff intentionally or purposefully concealed facts that would have led the Copyright Office to refuse the application.

**g.** The parties agree that a plaintiff may show ownership of a copyright by showing that the plaintiff is the creator of the work or that the plaintiff acquired legal ownership by transfer of the copyright.

**h.** The parties agree that a plaintiff may demonstrate infringement in three ways: (1) through direct evidence that the defendant actually copied, used, or appropriated the copyrighted material; (2) through evidence that the defendant had or could have had access to the copyrighted material and that the defendant's work is substantially similar to the copyrighted material; or (3) through evidence that the copyrighted material is strikingly similar to the defendant's work.

**i.** The parties agree that a plaintiff in a copyright infringement action may elect to receive actual damages plus the defendant's profits attributable to infringement, or statutory damages, when available. The plaintiff may make this election before or after the jury has made its finding on damages.

**j.** The parties agree that to establish trade secret misappropriation under FUTSA, a plaintiff must prove that: (1) it possessed a trade secret; and (2) the defendant misappropriated the trade secret.

**k.** The parties agree that the defamation requires a plaintiff to show (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official or figure, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory.

**l.** The parties agree that trade libel requires a plaintiff to show: (1) that one who published or communicated a falsehood about the plaintiff (a) knew, or reasonably should have known, that (b) the falsehood would induce others not to deal with the plaintiff; (2) that the falsehood did, in fact, play a material and substantial part inducing others not to deal with the plaintiff; and (3) which proximately caused the plaintiff to suffer special damages.

**11.   CONCISE STATEMENT OF EACH ISSUE OF FACT**

**a.** Whether the Royale High Web Server Source Code or the Royale High Place File contain trade secret or copyrighted information owned by Plaintiffs (the "Information").

**b.** Whether Plaintiffs took reasonable steps, under the circumstances, to maintain the secrecy of the Information.

**c.** Whether Sterling acquired Plaintiffs' trade secret information and knew or had reason to know that such information was acquired through improper means.

**d.** Whether Sterling disclosed or used Plaintiffs' trade secret information without express or implied consent and at the time of said disclosure or use knew or had reason to know that her knowledge of Plaintiffs' trade secret information was derived from or through a person who had utilized improper means to acquire it OR derived from or through a person who owed a duty to Plaintiffs to maintain its secrecy or limit its use.

**e.** Whether Sterling used improper means to acquire knowledge of Plaintiffs' trade secret information.

**f.** Whether Sterling disclosed or used Plaintiffs' trade secret information without express or implied consent at a time when Sterling knew or had reason to know that Sterling acquired the trade

secret under circumstances where Sterling had a duty to maintain its secrecy or limit its use.

**g.** Whether Sterling knew or should have known that Trice had signed a Nondisclosure Agreement with Plaintiffs.

**h.** Whether Sterling knew or should have known that Trice used improper means to acquire Plaintiffs' trade secrets.

**i.** Whether Sterling knew or should have known that Trice owed Plaintiffs' a duty to maintain the secrecy or limit the use of Plaintiffs' trade secrets.

**j.** Whether Sterling knew or should have known before a material change in her position that the Information was a trade secret and that Trice or Sterling had gained knowledge of or access to the Information by accident or mistake.

**k.** Whether Sterling willfully and maliciously misappropriated the Information.

**l.** Whether the copyrights attached to Plaintiffs Amended Complaint are valid. *See* Doc. 24-15.

**m.** Whether Trice copied, used, or appropriated Plaintiffs' copyrighted material for use in Crown Academy.

**n.** Whether Sterling copied, used, or appropriated Plaintiffs' copyrighted material for use in Crown Academy.

**o.** Whether Trice had access to or a reasonable possibility of access to Plaintiffs' copyrighted material.

**p.** Whether Sterling had access to or a reasonable possibility of access to Plaintiffs' copyrighted material.

**q.** Whether Crown Academy contains code that is substantially similar or strikingly similar to the copyrighted material.

**r.** Whether the protectable nonlinear elements found in Crown Academy and Royale High are virtually identical.

**s.** Whether Sterling knowingly or recklessly infringed on Plaintiffs' copyrighted material.

    **i. Sterling's Objection** – this is only relevant if statutory damages are in play, which are not.

**t.** Whether Ndalamba or Gnass published any false and defamatory statements about Sterling with knowledge or reckless disregard of the statements' falsity, or at least negligently.

**u.** Whether Sterling is a public figure.

**v.** Whether Ndalamba or Gnass's actions caused Sterling damages (monetary or otherwise) and how much.

**w.** Whether there is a reasonable probability of a causal connection between Sterling's actions and Plaintiffs' damages.

**x.** Whether Plaintiffs suffered actual damages and how much.

**y.** Whether Sterling was unjustly enriched by misappropriating a trade secret and by how much.

**z.** Whether Sterling profited from copyright infringement and by how much.

**aa.** The amount of a reasonable royalty for Sterling's misappropriation or use of the Information.

**bb.** The amount of a reasonable license fee for Sterling's use of Plaintiffs' copyrighted material.

**12. CONCISE STATEMENT OF EACH ISSUE OF LAW**

Whether the burden shifts to the defendant to prove that the defendant did not infringe the copyrighted material where the defendant's work is strikingly similar to the copyrighted material.

Whether for nonlinear elements of a computer program, the works must be virtually identical for a finding of infringement.

The remaining issues of law mostly concern the admissibility of certain evidence into the record at trial, which will be raised and discussed by the parties in their motions in limine that are due by December 17, 2021.

**13. LIST OF EACH PENDING MOTION OR UNRESOLVED ISSUE**

There are no pending motions.

**14. JURY INSTRUCTIONS**

**a. Plaintiffs' and Gnass's Proposed Jury Instructions**

      **i.** General Jury Instructions attached as Exhibit 7.
     **ii.** Copyright Jury Instructions attached as Exhibit 8.
   **iii.** Trade Secret Jury Instructions attached as Exhibit 9.
   **iv.** Defamation and Trade Libel Jury Instructions attached as Exhibit 10.

   **b.** **Sterling's Proposed Jury Instructions**

      **i.** Defamation Jury Instructions attached as Exhibit 11.
     **ii.** Trade Libel Jury Instructions attached as Exhibit 12.

**15.** **STATEMENT OF THE USEFULNESS OF FURTHER SETTLEMENT DISCUSSIONS**

At this time, the parties do not believe further settlement discussions would be useful.

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Respectfully submitted this 3rd day of December, 2021.

*/s/ Adam C. Losey*
**Adam C. Losey, Esq.**
Florida Bar No. 69658
Primary: alosey@losey.law
Secondary: docketing@losey.law
**George R. Coe, Esq.**
Florida Bar No. 298440
Primary: gcoe@losey.law
**Robert J. Rubin, Esq.**
Florida Bar No. 113393
Primary: rrubin@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-1605

*Trial Counsel for Plaintiffs*

Respectfully submitted,

Jomy Sterling AND
Star Status Group

By Their Attorney,
/s/ Shaun P. Keough
Shaun P. Keough (Trial Counsel)
Florida Bar  # 1000985
PARKER KEOUGH LLP
3505 Lake Lynda Dr. Suite 200
Orlando, FL 32817
Tel.: (321) 262-1146
Fax.: (617) 963-8315
E-mail: skeough@parkerkeough.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2021, a true and correct copy of this

Motion was filed via the ECF system, causing a copy to be served on all counsel of

record.

/s/ Adam C. Losey
**Adam C. Losey, Esq.**
Florida Bar No. 69658